JePhunneh LAWRENCE,
Plaintiff-Appellee,

v.

Elmer B. STAATS et al.,
Defendants-Appellants.

No. 78–1015.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 4, 1978.

Decided Feb. 5, 1981.*

JePhunneh Lawrence, pro se.

Paul F. Figley, Atty., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellants.

Stephen J. Hadley, Atty., and Roderic V. O. Boggs, Atty., Washington, D. C., were on brief, for the Washington Lawyers' Committee for Civil Rights Under Law as amicus curiae.

Before ROBINSON and MacKINNON, Circuit Judges, and JOHN H. PRATT,** United States District Judge for the District of Columbia.

Opinion for the Court filed by District Judge JOHN H. PRATT.

Concurring opinion filed by Circuit Judge MacKINNON.

Dissenting opinion filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

JOHN H. PRATT, District Judge:

This case raises the important question whether employees of the General Accounting Office (sometimes hereinafter GAO) are covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, 2000e–16(a). It comes before us on an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), from the rulings of the District Court, Flannery, J., holding that Title VII does not apply to the GAO. For reasons set forth below, we affirm for reasons different than those stated by the district court, and remand for further proceedings consistent with this opinion.

*Statement of Facts*

Plaintiff, a former employee of GAO, brought suit for money damages and injunctive relief pursuant to Title VII, the Fifth Amendment and 28 U.S.C. § 1331,

---

* Opinion on motion for rehearing will be filed.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

stemming from his dismissal from that employment. Plaintiff, as an "excepted service employee," was employed as an Attorney-Advisor at the GAO from August, 1976 until he was terminated effective July 15, 1977. The gravamen of his complaint is racial discrimination. Defendants moved to dismiss for failure to exhaust his administrative remedies, to which plaintiff responded that as an excepted service employee, he was not covered by Title VII, despite the coverage of GAO employees in the competitive service, and for the additional reason that exhaustion of administrative remedies would have been futile. In denying defendants' motion to dismiss, the District Court held that all employees of the GAO were outside the coverage of Title VII.[1] In its discussion, the District Court recognized the fact that the legislative history appeared to be at variance with the statutory language, and relied upon the latter as controlling.[2] In denying defendants' motion for reconsideration, the District Court certified the issue for immediate appeal.

*Analysis*

1. The Applicable Statutes:

The coverage of Title VII is set forth in 42 U.S.C. § 2000e–16(a) as follows:

*Employment by Federal Government*

(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage.

All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, *in executive agencies (oth-*

*er than the General Accounting Office) as defined in section 105 of Title 5* (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, *and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service*, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin. (Emphasis supplied).

The term "executive agency" in 5 U.S.C. § 105 is defined:

*Executive Agency*

For purposes of this Title, "Executive Agency" means an Executive department, a government Corporation, an independent establishment.

Pub.L.No.89–554, Sept. 6, 1966, 80 Stat. 379.

The term "independent establishment" is previously defined in 5 U.S.C. § 104 of the same statute to include:

... (2) The General Accounting Office. Pub.L.No.89–554, Sept. 6, 1966, 80 Stat. 379; Pub.L.No.91–375, § 6(c)(2), August 12, 1970, 84 Stat. 775.

Based upon a literal reading of these statutory provisions, the District Court concluded that:

... regardless of whether the General Accounting Office is actually in the legislative branch, for the purpose of Title VII, the General Accounting Office. is an executive agency. When Congress stated that Title VII would apply to executive

---

**1.** The District Court's ultimate holding was that:

An examination of the first part of the formula in 42 U.S.C. § 2000e–16(a), and of 5 U.S.C. § 105 to which it refers, indicates that for the purposes of Title VII, the General Accounting Office is an executive branch agency and that section 2000e–16(a) therefore excludes it from the coverage of Title VII. (A 67).

**2.** The District Court's reference to the conflict is as follows:

Aside from recitations of the text of the bill, this (Statement in the Conference Committee's section-by-section analysis) appears to be the only direct reference of the General Accounting Office in the legislative history. This passage directly contradicts the language of the statute. Despite the specific nature of this statement in the conference report, this court feels constrained to hold that even this precise mention of the General Accounting Office in the report cannot supervene the plain language of the statute. (A 68).

agencies other than the General Accounting Office as defined in 5 U.S.C. § 105, Congress clearly exempted the General Accounting Office from coverage. (A67–68).

From the foregoing, there can be no doubt that the protections of Title VII apply to all employees of executive agencies and that except for the specific exclusion of GAO from coverage *as an executive agency*, all employees of GAO would have been included for coverage as such by virtue of 5 U.S.C. §§ 104, 105. This, however, does not end the matter.

The same sentence of the statute also provides coverage to *those units in the legislative branch having positions in the competitive service.* From this, it is argued that all employees of the GAO who were excluded from coverage in the parenthetical clause "(other than the General Accounting Office)" are to be included by reason of the coverage of "units of the legislative . . . [branch]." It is not reasonable to ascribe to Congress the intent to exclude the particular group from coverage in the forepart of the sentence and then include the same group in the afterpart. The only reasonable accommodation is to ascribe to Congress the intent to extend only to those employees of the GAO holding positions in the competitive service the same coverage as those units of the legislative branch having positions in the competitive service. Such an interpretation not only removes the apparent gap or hiatus in the wording of the statute as written but recognizes the fact that the GAO is a part of the legislative branch of government, which fact is nowhere challenged and is conceded by the parties both here and below.[3] More impor-

tantly, it is consistent with the clearly expressed legislative intent that employees of GAO be covered under Title VII.

2. The Legislative History

When 42 U.S.C. § 2000e–16(a) was being drafted in 1972, Congress had before it as models certain executive orders addressed to the subject of employment discrimination within the federal government. One of these was E.O. 11478, which prohibited discrimination in employment and was designed specifically to reach a very broad spectrum of federal employees:

Section 6. This Order applies (a) *to military departments as defined in section 102 of title 5, United States Code, and executive agencies (other than the General Accounting Office) as defined in section 105 of title 5, United States Code,* and to the employees thereof (including employees paid from nonappropriated funds), and (b) *to those portions of the legislative and judicial branches* of the Federal Government and of the Government of the District of Columbia *having positions in the competitive service and to the employees in those positions.* This Order does not apply to aliens employed outside the limits of the United States. (Emphasis supplied).

The language of 42 U.S.C. § 2000e–16(a) with respect to the executive branch is virtually a carbon copy of the underscored language in E.O. 11478. In view of the farranging reach of the Executive Order and its predecessors, it cannot plausibly be argued that Congress in employing almost identical language purposely intended to

---

**3.** Further indication of GAO's existence as part of the legislative branch is the fact that its operating funds are provided in the annual Legislative Branch Appropriations Act. See for example, the Legislative Branch Appropriations Act, 1978, Pub.L.No.95–94, approved August 5, 1977, 91 Stat. 653, 680.

In at least one prior enactment, Congress has treated the GAO *as if* it were a branch of the executive. *See* 31 U.S.C. § 46a which concerns the applicability of compensation provisions to employees of the GAO and provides that:

This Act and any other general legislation enacted governing the employment, compensation, emoluments, and status of officers and employees of the United States shall apply to officers and employees of the General Accounting Office in the same manner and to the same extent *as if such officers and employees were in or under the executive branch of the Government.* (Emphasis supplied).

Such language necessarily assumes that the GAO is not in the executive branch of the Government.

exclude employees of the GAO from coverage under Title VII.

In fact, the legislative history is to the contrary. The Conference Committee's section-by-section analysis printed in the Congressional Record at the request of Senator Williams, the primary sponsor of the Senate bill, contains a clear indication of what Government departments and offices Congress intended to reach when it adopted § 717(a) later codified as 42 U.S.C. § 2000e–16(a). It reads:

> This subsection provides that all personnel actions of the U.S. Government, affecting employees or applicants for employment shall be free from discrimination based on race, color, religion, sex or national origin. Included within this coverage are executive agencies, the United States Postal Service, the Postal Rate Commission, certain departments of the District of Columbia Government, the *General Accounting Office*, Government Printing Office, and the Library of Congress. (Emphasis supplied).

118 Cong.Rec. 7169 (March 6, 1972), reprinted in Subcomm. on Labor of Comm. on Labor and Public Welfare, 92 Cong., 2d Sess., The History of the Equal Employment Opportunity Act of 1972 (hereinafter cited as Leg. Hist.), at 1850–51.

The section-by-section analysis also states:

> This subsection would make clear that all *personnel actions* of the U.S. Government affecting employees or applicants for employment shall be made free from any discrimination based on race, color, religion, sex or national origin. *All employees of any agency, department, office or commission having positions in the competitive service are covered by this section.* (Emphasis supplied).

118 Cong.Rec. 4943 (Feb. 22, 1972), reprinted in Leg. Hist. at 1777.

These statements of the Conference Committee are not the only specific references in the legislative history to the GAO and to the general limitation to employees in the competitive service. Senator Cranston in sponsoring an amendment to bring the Library of Congress within the coverage of Title VII made the following remarks on the Senate floor:

> Mr. President, unfortunately, as drafted, these provisions, which in many respects only codify requirements presently contained in Executive orders and the Constitution, would not apply to employment in the Library of Congress. That is because legislative branch coverage in the bill is limited to "positions in the competitive service." Although this would apply to both the *General Accounting Office* and the Government Printing Office— which are agencies of the Congress, it would not apply to the Library of Congress which does not have positions in the competitive service and is not generally bound by the Federal personnel manual. (Emphasis supplied).

118 Cong.Rec. 4921 (Feb. 22, 1972).

The reference to the coverage of the legislative branch being limited to positions in the competitive service [4] and the applicability of such to the GAO is a clear expression of legislative intent.

---

4. The term "competitive service" is defined in 5 U.S.C. § 2102 as follows:

(a) The "competitive service" consists of—
(1) all civil service positions in the executive branch, except—
(A) positions which are specifically excepted from the competitive service by or under statute; and
(B) positions to which appointments are made by nomination for confirmation by the Senate, unless the Senate otherwise directs;
(2) civil service positions not in the executive branch which are specifically included in the competitive service by statute; and
(3) positions in the government of the District of Columbia which are specifically included in the competitive service by statute.
(b) Notwithstanding subsection (a)(1)(B) of this section, the "competitive service" includes positions to which appointments are made by nomination for confirmation by the Senate when specifically included therein by statute.
(c) As used in other Acts of Congress, "classified civil service" or "classified service" means the "competitive service."

While some argument may be made that the phrase "having positions in the competitive service" could identify either the governmental units that are covered or merely the employees within those units who may invoke the protection of Title VII, the clear weight of the legislative history supports the narrow view that Congress only intended the Act to apply to competitive service employees. Two recent judicial decisions have also recognized that the Title VII reference to the competitive service were an implicit attempt to exclude "excepted" service employees.[5] In a recent opinion of this court, we stated that Title VII "expressly exempts non-competitive service employees of the Judicial and Legislative Branches and arguably . . . it does not embrace excepted service employees of the Executive Branch." *Bethel v. Jefferson*, 589 F.2d 631, 637 n. 29 (D.C.Cir.1978). The Supreme Court appears to have accepted this interpretation in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).[6]

In summary, the import of the legislative history indicates the clear intent of Congress to include the GAO within the general coverage of Title VII and to apply said coverage only to GAO employees in the competitive service. The remedial provisions of Title VII do not reach excepted service employees. Since appellee Lawrence is an excepted service employee his employment rights are not protected by Title VII. What those rights are we do not consider. The sole issue certified on appeal concerned the applicability of Title VII to employees of the GAO. We therefore affirm the order of the District Court filed June 29, 1977 and remand this action to the District Court for further proceedings consistent with this opinion.

MacKINNON, Circuit Judge (concurring):

At issue is whether the excepted service employees of the General Accounting Office (GAO) are covered by the Equal Employment Opportunity Act of 1972, P.L. 92–261, 86 Stat. 103 (1972). I join Judge Pratt's opinion in concluding from its language, structure, and legislative history that such Act applies only to those GAO employees who hold positions in the competitive service.

I.

Section 717(a) of the Act provides:

All personnel actions affecting employees or applicants for employment . . . in executive agencies (*other than the General Accounting Office*) as defined in section 105 of title 5 . . . and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–16(a) (emphasis added). It is clear from the italicized clause of this section that the GAO is treated initially as one of the executive agencies, for the statute speaks of "executive agencies (other than the General Accounting Office)". And the following reference to "executive agencies . . . as defined in section 105 of Title 5," also includes the GAO as one of the executive agencies, for that section provides:

For the purposes of this title, "Executive agency" means an Executive department, a Governmental corporation, and an *independent establishment.*

5 U.S.C. § 105 (emphasis added). An "independent establishment" is defined by the

---

**5.** The term "excepted service" is defined in 5 U.S.C. § 2103 as follows:

    (a) For the purpose of this title, the "excepted service" consists of those civil service positions which are not in the competitive service.

    (b) As used in other Acts of Congress, "unclassified civil service" or "unclassified service" means the "excepted service."

**6.** The Court also noted more directly that "since petitioner was not in the competitive service . . . the remedial provision of Section 717 of Title VII were not available to her." *Davis v. Passman, supra,* at 247 n. 26, 99 S.Ct. at 2278 n. 26.

preceding section 104 to include the General Accounting Office as follows:

> For the purpose of this title, "independent establishment" means—
>
> (1) an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive Department, military department, Government corporation, or part thereof, or part of an independent establishment; and
>
> (2) *the General Accounting Office.*

5 U.S.C. § 104 (emphasis added). Therefore, the plain language of the statute leads to the conclusion that Congress treated the GAO as one of the executive agencies, but, by adding the parenthetical clause "(other than the General Accounting Office)", *completely* exempted the GAO from the Act.

It is nevertheless argued that the employees of the GAO in both its "excepted" and "competitive service" are covered by the Act because of a later provision in Section 717(a) which provides that "[a]ll personnel actions affecting employees . . . in those units of the *legislative* and judicial branches of the Federal Government having positions in the competitive service . . . shall be made free from any discrimination. . . ." Normally such an argument would fail because of the interpretive rule that specific statutory provisions control over general provisions. *Brown v. GSA*, 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976); *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836 (1973); *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966); *Patterson v. United States*, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959); *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 228–29, 77 S.Ct. 787, 791–92, 1 L.Ed.2d 786 (1957); 2A *Sutherland Statutory Construction* § 51.05 at 315 (Sands ed. 1972). As the Court declared in *Fourco* :

> [T]he law is settled that "However inclusive may be the general language of a statute, it 'will *not* be held to apply to a matter *specifically* dealt with in another part of the same enactment. . . . Specific terms prevail over the general in the

same or another statute which otherwise might be controlling.' *Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 [52 S.Ct. 322, 323, 76 L.Ed. 704]." *MacEvoy Co. v. United States*, 322 U.S. 102, 107 [64 S.Ct. 890, 893, 88 L.Ed. 1163].

*Fourco, supra*, 353 U.S. at 229, 77 S.Ct. at 792 (emphasis added). Under this rule, the special provision excluding "the General Accounting Office" would normally prevail over the general provision including "employees . . . in those units of the legislative . . . branch[] . . . having positions in the competitive service."

Thus, if our interpretation is to be controlled by the plain language of the statute and generally accepted rules of statutory construction, the GAO and all of its employees are excluded from the Act. There are, however, indications in the legislative history that Congress did intend the Act to apply to the GAO to some extent, and to apply since the GAO is a part of the legislative branch of government.

For example, Senator Javits remarked on the Senate floor that "*those employees of Congress or congressional agencies, in the competitive service* as it is called, which would include *employees of the General Accounting Office* . . . are included within the ambit of the [Senate] bill as it now stands." 118 Cong.Rec. 4499 (1972) (emphasis added).

In addition, Senator Cranston in proposing an amendment to bring the Library of Congress within the Act, stated: "[a]lthough [the Senate bill as currently drafted] would apply to both the *General Accounting Office* and the Government Printing Office—*which are agencies of the Congress*, it would not apply to the Library of Congress . . . ." *Id.* at 4921 (emphasis added).

Finally, in a section-by-section analysis of the Senate bill as adopted by the Conference Committee, Senators Williams and Javits stated with regard to the scope of Section 717(a):

> This subsection provides that all personnel actions of the U.S. Government, affecting employees or applicants for em-

ployment, shall be free from discrimination based on race, color, religion, sex or national origin. *Included within this coverage are executive agencies*, the United States Postal Service, the Postal Rate Commission, certain departments of the District of Columbia Government, *the General Accounting Office*, Government Printing Office, and the Library of Congress.

*Id.* at 7169 (emphasis added). If these expressions of Congressional intent are to be given effect,[1] the most obvious vehicle is the provision extending coverage to "employees . . . in those units of the legislative . . . branch[ ] . . . having positions in the competitive service," notwithstanding that GAO employees were initially treated as part of the executive branch.

The crucial question then arises whether the scope of the coverage accorded to the legislative branch encompasses employees in the excepted service. The language of the statute strongly suggests that it applies only to employees who actually hold competitive service positions ("All personnel actions affecting *employees* . . . in those units of the legislative . . . branch[ ] . . . *having positions in the competitive service . . .* shall be made free from any discrimination. . . .") (emphasis added). This provision has been so interpreted by the Supreme Court, *Davis v. Passman*, 442 U.S. 228, 247,

247 n.26, 99 S.Ct. 2264, 2278, 2278 n.26, 60 L.Ed.2d 846 (1979), by this Court, *Bethel v. Jefferson*, 589 F.2d 631, 637 n.29 (D.C.Cir. 1979), and by at least one commentator, Comment, *The Coverage of Federal Excepted Service Personnel Under the Equal Employment Opportunity Act of 1972*, 65 Geo. L.J. 837, 841 (1977). GAO argues, however, that this interpretation is erroneous because the phrase "having positions in the competitive service" should be read as modifying the words "units of the legislative branch" and not the word "employees". Thus, GAO contends that as long as any unit of the legislative branch has one competitive service position, its entire complement of employees is covered by the Act, regardless of whether the particular employee who invokes its protection is a member of the competitive or excepted service. GAO thus concludes that it is a unit of the legislative branch which has some positions in the competitive service and therefore that the Act applies to appellant Lawrence.

Although this construction of the statute is not wholly lacking in support if we are to ignore the plain exemption of the GAO, it simply cannot be squared with the structure and legislative history of Section 717(a). Turning first to the structure of Section 717(a), it is immediately apparent that Congress clearly differentiated between executive agencies on the one hand and the legis-

---

1. Courts may rely upon legislative history to construe a statute in a manner contrary to its plain language when such is necessary to effectuate Congress' intent and understanding of a statute. *See, e. g., Lynch v. Overholser*, 369 U.S. 705, 710, 717, 82 S.Ct. 1063, 1067, 1070, 8 L.Ed.2d 211 (1962); *Harrison v. Northern Trust Co.*, 317 U.S. 476, 479, 63 S.Ct. 361, 362, 87 L.Ed. 407 (1943); *U. S. v. American Trucking Assns.*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940); *United States v. Kelly*, 328 F.2d 227, 236 (6th Cir. 1964); 2A *Sutherland Statutory Construction*, § 46.07 p. 65 (Sands, 1972). In this case, Senators Williams', Javits', and Cranston's construction of Section 717(a) is entitled to considerable weight as they played significant roles in the passage of the Act. Senator Williams was the primary sponsor and floor manager, *see* 117 Cong.Rec. 31718 (1971) (remarks of Sen. Williams); 118 Cong.Rec. 4948–49, 4938 (1972) (remarks of Sen. Mansfield), of the Senate bill, which, as amended, was ultimately passed. He was also the Chairman of the Senate Committee on Labor and Public Welfare that handled the Senate bill. *See* S.Rep.No.415, 92d Cong., 1st Sess. (1971). Senator Javits was the ranking minority member of the same committee, and was "very heavily involved" with the bill. 118 Cong.Rec. 579 (1972) (remarks of Sen. Javits). Senator Cranston was also a member of the Committee on Labor and Public Welfare and a co-sponsor of the Senate bill as reported from that committee, 118 Cong.Rec. 4929 (1972) (remarks of Sen. Cranston). In addition, both Senators Williams and Javits served on the Conference Committee, *see* Legislative History, Equal Employment Opportunity Act of 1972, 92d Cong. 2d Sess., March 2, 1972, 1842. Thus, even though the plain language of Section 717(a) excludes the entire GAO from the Act, it is appropriate to rely upon the analysis of Senators Williams, Javits, and Cranston, and to include the GAO within the Act under the coverage extended by Section 717(a) to employees of the legislative branch.

lative and judicial branches on the other. The explanation for this is also obvious. Section 717(a) proscribes discrimination in executive agencies without qualification ("*All* personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination . . . .") (emphasis added), but qualifies its application to the legislative and judicial branches with the phrase "having positions in the competitive service". This structure suggests that Congress intended to afford substantially different, and by clear implication, substantially less extensive coverage to employees of the legislative and judicial branches. Under the interpretation of Section 717(a) argued by the GAO, however, this structure would be largely obliterated, since all employees of a unit would be covered by the statute, and thus would be treated in exactly the same manner as employees of executive agencies, as long as only one employee in that unit held a position in the competitive service.[2] In essence, such construction implies that Congress drew a meaningless distinction for no apparent reason. The court should be very reluctant to draw such inference.[3]

That GAO's reading of Section 717(a) does violence to its structure is made especially clear when the manner in which Congress treated the GAO itself in the statute is considered. Congress *specifically excluded* the GAO from Section 717(a)'s definition of executive agencies, no doubt because it did not wish to bring all GAO employees within the scope of the Act. Under GAO's construction of the coverage afforded employees of the legislative branch, however, all GAO employees would be found to be covered by the Act. *Thus, to accept this interpretation, we must ascribe to Congress the intent to take the entire GAO completely out of the Act in the forepart of the statutory sentence and then to put the entire agency right back in again in the next part of the sentence.* To so interpret the intent of Congress would be highly unreasonable. It is eminently more reasonable to assume that had Congress intended the Act to apply to all GAO employees, it would not have excepted the GAO from the definition of the executive agencies in the first place.

Turning next to the legislative history, we see that Congress intended, with respect to the legislative branch in general and the GAO in particular, to extend coverage only to competitive service employees. Section 717(a) has its genesis in a provision of the Senate bill, S.2515, 92d Cong., 1st Sess. § 11 (1971)[4] that was obviously modelled after Executive Order No. 11478. This order,

---

**2.** Although there appears to be no authoritative empirical data on this point, I readily join in the dissent's assumption that it is "improbable" that any unit of the legislative branch would not contain at least one employee in the competitive service, see Dis.Op. at 443–444 n.70.

**3.** The GAO's construction is also bottomed on the unlikely assumption that Congress intended a unit of lawyers in an agency's counsel's office to have their status determined by the fact that messengers and typists in the unit may be in the competitive service.

**4.** The original Senate bill, as submitted to the Senate Committee on Labor and Public Welfare, contained the following language:

> All personnel actions affecting employees or applicants for employment . . . in executive agencies (other than the General Accounting Office) as defined in section 5 of title 5, United States Code . . . and in those portions of the government of the District of Columbia, and the legislative and judicial branches of the Federal Government having positions in the competitive service, shall be made free

from any discrimination based on race, color, religion, sex, or national origin.

See S.Rep.No.415, 92d Cong., 1st Sess. 30 (1971). Although this language was amended in minor respects by the Senate Committee, see id. at 62–63 ("in those units of the Government of the District of Columbia having positions in the competitive service, and in the legislative and judicial branches of the Federal Government having positions in the competitive service"), and on the floor of the Senate, see 118 Cong. Rec. 4921–4923 (1972) ("in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress"), there is no indication in the legislative history that these minor changes in language were intended in any way to broaden the scope of the original language, apart from including the Library of Congress in the Act.

entitled "Equal Employment Opportunity in the Federal Government", unambiguously limited its coverage to legislative branch employees who held competitive service positions:

> This Order applies (a) to ... executive agencies (other than the General Accounting Office) as defined in section 105 of title 5, United States Code, and to the employees thereof, and (b) to those portions of the legislative and judicial branches of the Federal Government ... *having positions in the competitive service and to the employees in those positions.*

Exec. Order No. 11478, 42 U.S.C. § 2000e note (emphasis added).

Although Section 717(a) and the Executive Order do not contain identical language, the legislative history of Section 717(a) indicates that the scope of its legislative branch coverage is the same as that of the order. In proposing his amendment to include the Library of Congress in the statute, Senator Cranston explained:

> Mr. President, unfortunately, as drafted, these provisions, which in many respects *only codify requirements presently contained in Executive orders* and the Constitution, would not apply to employment in the Library of Congress. That is because *legislative branch coverage in the bill is limited to 'positions in the competitive service'.* Although this would apply to both the General Accounting Office and the Government Printing Office—

which are agencies of the Congress, it would not apply to the Library of Congress which *does not have positions in the competitive service* and is not generally bound by the Federal personnel manual.

118 Cong.Rec. 4921 (1972) (emphasis added). And, as noted earlier, Senator Javits also declared during the floor debate in the Senate:

> [J]ust to make one point clear, it is to be noted that those employees of Congress or congressional agencies, *in the competitive service,* as it is called, which would include employees of the General Accounting Office and the Printing Office, and perhaps some other housekeeping employees, are included within the ambit of the bill as it now stands.

*Id.* at 4499 (emphasis added). These statements, coming from persons whose familiarity and involvement with the legislation at issue was substantial, authoritatively establish Congress' intent.[5]

## II.

The interpretation of Section 717(a) suggested by the dissent is rejected largely because it collides with the language of the statute. Section 717(a) protects "employees ... in those units of the legislative and judicial branches ... having positions in the competitive service." 42 U.S.C. § 2000e–16(a). Although this language is amenable to two possible readings—one in which the phrase "having positions in the

---

5. *See* n.1 *supra.*

Some statements in the legislative history, it may be argued, are not completely consistent with the terms of the Act or with Senator Javits' and Senator Cranston's interpretation of the reach of Section 717(a). For example, the Senate Report states that "[a]ll employees subject to the executive branch and Civil Service Commission control or protection are covered by this section", S.Rep.No.415, 92d Cong., 1st Sess. 45 (1971), and a section-by-section analysis of the Senate bill, as it read when adopted by the Conference Committee, states that "[t]his subsection provides that all personnel actions of the U. S. government affecting employees or applicants for employment shall be free from discrimination ...", 118 Cong.Rec. 7169 (1972). These statements, however, are extremely cryptic and even somewhat contra-

dictory, and do not cast much light upon the issue before us. At best they are only general statements which, when analyzed along with the language of the statute and more detailed descriptions of the statute's scope, lose much of their force.

Furthermore, since Senators Javits and Cranston were active in passing the bill, and were members of the committee that handled the bill and issued the Senate report, and since Senator Javits co-authored the referenced section-by-section analysis, these brief statements must be read in keeping with the understanding of the legislation as expressed by Senators Javits and Cranston on the Senate floor. That understanding quite clearly was that legislative branch coverage was limited to employees holding positions in the competitive service.

competitive service" modifies the word "employees" and thereby limits coverage to competitive service employees, and one in which the phrase modified the words "units of the legislative and judicial branches" and thereby extends coverage to all employees of units containing at least one competitive service position, the legislative history of the statute demonstrates that the former interpretation accurately effectuates Congress' intent. This court gave the same construction to the same provision of the Act in *Bethel v. Jefferson*, 589 F.2d 631, 637 n.29 (D.C.Cir.1979) ("[T]he legislation *expressly exempts noncompetitive-service employees* of the Judicial and Legislative Branches . . . .") (emphasis added).

Now, finding the word "unit" to be ambiguous, the dissent argues for a third construction in which Congress would be found to have included with Section 717(a) those "legislative and judicial employees whom Congress has placed as a group under the civil service laws, and with respect to whom Congress delegated to the Civil Service Commission the responsibility for categorizing the positions as within either the competitive or excepted service." Dis. Op. at 443. This standard, however, bears little resemblance to the words used by Congress to express its will, and those words are the most important manifestation of Congressional intent. *See e. g.*, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). This construction would also extend coverage to employees working in units which do *not* "hav[e] positions in the competitive service". For example, it would reach an excepted service employee serving in a unit comprised totally of excepted service employees. Dis. Op. at 443–444 n.70.

The dissent is nevertheless untroubled by these apparent anomalies, because of a

claimed reliance upon a "far-ranging probe into the legislative history of Section 717(a)", *id.* at 437, and a statement in the Senate report that "[a]ll employees subject to . . . Civil Service Commission control or protection are covered by this section", *id.* at 446. I am not persuaded, however, that this sentence compels an interpretation of Section 717(a) which is so at odds with the meaning communicated by its language. I also concur in this Court's prior observation that "this statement [is] too cryptic to carry much weight in interpreting the statute." *Bethel v. Jefferson, supra*, 589 F.2d at 639 n.47.

### III.

The language of the statute and its legislative history establish that Congress intended, through the Equal Employment Opportunity Act of 1972, to extend Title VII coverage only to those employees in the GAO, and in all units of the legislative branch, who hold positions in the competitive service. Since appellant Lawrence is a member of the excepted service, the district court correctly held that Title VII did not apply to him, and I thus concur in Judge Pratt's opinion affirming its ruling.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, dissenting:

At stake on this appeal is the eligibility of large numbers of federal servants in the Legislative and Judicial Branches for the valuable protections afforded by Title VII of the Civil Rights Act of 1964,[1] as amended by the Equal Employment Opportunity Act of 1972.[2] It has aptly been noted in other contexts that "Title VII 'leaves much to be desired in clarity and precision,'"[3] and the provision at issue here certainly is no excep-

---

**1.** Pub.L.No. 88–352, tit. VII, 78 Stat. 253 (1964), as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1976).

**2.** Pub.L.No. 92–261, 86 Stat. 103 (1972), codified in various sections of 42 U.S.C. §§ 2000e to 2000e–17 (1976).

**3.** *Bethel v. Jefferson*, 191 U.S.App.D.C. 108, 114, 589 F.2d 631, 637 (1978), quoting *Cunningham v. Litton Indus.*, 413 F.2d 887, 889 (9th Cir. 1969); accord, *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1232 (8th Cir. *en banc* 1975).

tion. After a far-ranging probe into the legislative history of Section 717(a),[4] however, I am satisfied that Congress intended the vast majority, though not all, of federal legislative and judicial employees in the excepted service to enjoy the same equal employment opportunity that Title VII accords to all competitive service personnel. I must, then, respectfully dissent.

## I

A brief recitation of the facts will aid the analysis. In August, 1976, JePhunneh Lawrence was hired by the General Accounting Office (GAO) as an attorney-adviser,[5] an excepted-service position in the federal civil service.[6] In May, 1977, after receiving a work evaluation rating his performance as unsatisfactory,[7] and without registering a grievance with his agency,[8] he instituted this litigation in the District Court, alleging that GAO had engaged in racially discriminatory employment practices against him and other black workers.[9] Lawrence founded his claim on both Title VII[10] and the equal protection component of the Fifth Amendment.[11] The defendants, GAO and the Civil Service Commission—the appellants here—moved to dismiss the action on the grounds that Title VII was Lawrence's sole avenue for relief and that his suit was barred because he had failed to pursue his Title VII administrative remedies with GAO and the Civil Service Commission.[12] The District Court disagreed, held that employees of GAO are not covered by Title VII, and accordingly denied the motion to dismiss.[13] Lawrence was prepared to amend his complaint and continue to press

---

4. Civil Rights Act of 1964, § 717(a), as amended, 42 U.S.C. § 2000e–16(a) (1976), quoted in relevant part in text *infra* at note 32.

5. Joint Appendix (J. App.) 7–8.

6. The federal civil service consists of all appointive positions in all three branches of the Government except the uniformed services, 5 U.S.C. § 2101 (1976). All such positions are categorized under either the competitive or excepted service. The excepted service is denoted in 5 U.S.C. § 2103 (1976) as all positions not in the competitive service, which itself is defined in 5 U.S.C. § 2102 (1976):
   (a) The "competitive service" consists of—
   (1) All civil service positions in the executive branch except—
   (A) positions which are specifically excepted from the competitive service by or under statute; and
   (B) positions to which appointments are made by nomination for confirmation by the Senate, unless the Senate otherwise directs;
   (2) civil service positions not in the executive branch which are specifically included in the competitive service by statute; and
   (3) positions in the government of the District of Columbia which are specifically included in the competitive service by statute.
   (b) Notwithstanding subsection (a)(1)(B) of this section, the "competitive service" includes positions to which appointments are made by nomination for confirmation by the Senate when specifically included therein by statute.
   (c) As used in other Acts of Congress, "classified civil service" or "classified service" means the "competitive service".

7. J. App. 8, 82–83.

8. In a conversation with his supervisors concerning his performance rating, Lawrence suggested that their judgment might have been influenced by his earlier activities with the GAO's equal employment opportunity advisory council, J. App. 10, 82–83, but he did not file a grievance. At that time, GAO and the Civil Service Commission maintained that excepted-service employees of GAO were not covered by Title VII. Both agencies have since reversed their stance on this point. See Part IV *infra*.

9. J. App. 5–13. Lawrence's employment was terminated as of July 15, 1977. J. App. 81.

10. J. App. 5. Section 717 of Title VII, 42 U.S.C. § 2000e–16 (1976), extends to the bulk of the federal workforce the provisions previously ensuring equal employment opportunity only in the private sector. See, *e. g., Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14, 97 S.Ct. 2720, 2728 n.14, 53 L.Ed.2d 786, 799 n.14 (1977); *Morton v. Mancari*, 417 U.S. 535, 547, 94 S.Ct. 2474, 2481, 41 L.Ed.2d 290, 293 (1974).

11. See, *e. g., Bolling v. Sharpe*, 347 U.S. 497, 498–499, 74 S.Ct. 693, 694, 98 L.Ed. 884, 886–887 (1954).

12. J. App. 19. These agencies have not always subscribed to their present position that GAO employees are entitled to the benefits of Title VII. See note 8 *supra*; Part IV *infra*.

13. *Lawrence v. Staats*, Civ. No. 77–913 (D.D.C. July 28, 1977), J. App. 42–43.

those of his grievances which were constitutionally based.[14]

Appellants thereupon moved for reconsideration of the ruling or, in the alternative, for certification of the accompanying order for immediate interlocutory appeal.[15] The District Court granted the latter request,[16] thus enabling appellants to bring here the question whether GAO employees are included within the provisions of Title VII. In its memorandum opinion, the court stated that the decision on the certified issue could be dispositive of the case because, if Title VII is found to be applicable to Lawrence, it would feel constrained on remand to dismiss the action for nonexhaustion of administrative remedies.[17]

Two inquiries thus become vital: Is Lawrence, as an excepted-service employee of GAO, entitled to the protections of Title VII? If so, can he still prosecute his claim in the District Court despite his failure to file a complaint with either GAO or the Civil Service Commission? The District Court felt that the language of Title VII compels the conclusion that GAO as a whole is excluded.[18] I agree with my colleagues [19] that, on the contrary, the statute is ambiguous, and that the legislative history points to a different result.[20] We part ways, however, respecting the exact scope of coverage extended to GAO. The court today interprets the law as encompassing only competitive-service personnel,[21] and thus as excluding Lawrence. I would, instead, hold that Title VII extends to any GAO employee appointed subject to the civil service laws, regardless of competitive status.[22] Under that theory Lawrence should have sought relief from his agency, with an optional appeal to the Civil Service Commission, before seeking judicial action. Because he did not do so, his suit would ordinarily be considered premature,[23] and the passage of time would now preclude utilization of administrative mechanisms.[24] I think, however, that the somewhat peculiar circumstances presented here warrant a different result. I would thus remand to the District Court with directions to grant Lawrence leave to invoke GAO's Title VII grievance procedures, and to retain jurisdiction until the conclusion of any administrative action.[25]

## II

As originally enacted in 1964, Title VII offered no aid to employees of the Federal Government.[26] At the time, Congress simply declared that "it shall be the policy of the United States to insure equal employment opportunities for Federal employees without discrimination because of race, color, religion, sex or national origin and the President shall utilize his existing authority to effectuate this policy." [27] The President

14. J. App. 8b–9b, 17b–18b.

15. J. App. 44–45. See 28 U.S.C. § 1292(b) (1976).

16. *Lawrence v. Staats*, Civ. No. 77–913 (D.D.C. Oct. 11, 1977), J. App. 66–69.

17. *Id.* at 4, J. App. 69.

18. *Id.* at 3, J. App. 68.

19. See Majority Opinion (Maj. Op.) at 429–431; Concurring Opinion (Conc. Op.) at 432–433, 434–435.

20. See Part II *infra.*

21. See Maj. Op. at 431; Conc. Op. at 431, 436.

22. See Parts II, III *infra.*

23. See 42 U.S.C. § 2000e–16(c) (1976); *Brown v. GSA*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402, 411 (1976).

24. A federal employee alleging discrimination proscribed by Title VII must file a complaint with his or her agency within 30 days of the date of the protested action. 29 C.F.R. § 1613.-214(a)(1)(i) (1979).

25. See Part IV *infra.*

26. See Civil Rights Act of 1964, §§ 701–716(c), 42 U.S.C. §§ 2000e to 2000e–15 (1976).

27. Civil Rights Act of 1964, Pub.L.No. 88–352, § 701(b) (2d proviso), 78 Stat. 254 (codified at 5 U.S.C. § 7151 (1976), renumbered at 5 U.S.C. § 7201 and amended by Civil Service Reform Act of 1978, Pub.L.No. 95–454, §§ 310, 703(a)(1), 92 Stat. 1152, 1216).

thereafter promulgated an executive order implementing this policy in federal employment and placing primary responsibility for oversight on the Civil Service Commission.[28]

By 1972, it became very clear that if equal employment opportunity was to become a reality in federal agencies, more stringent measures were needed.[29] Consequently, in the Equal Employment Opportunity Act of 1972 [30] Congress added a new section to Title VII designed to spur the Government's antidiscrimination drive and to set an example for the private sector.[31] Section 717(a), the new provision, specifies in pertinent part:

> All personnel actions affecting employees or applicants for employment . . . in executive agencies (other than the General Accounting Office) as defined in section 105 of title 5 . . . , in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any

discrimination based on race, color, religion, sex, or national origin.[32]

Save with respect to the Library of Congress, the Civil Service Commission retained primary responsibility for achieving equal opportunity in the federal workforce.[33] Each covered agency was required to promulgate regulations establishing a program to promote equal opportunity, including a procedure for handling discrimination complaints.[34] The difficulty with which we are confronted lies in determining exactly which federal agencies are covered by Section 717(a) and, more particularly, whether some or all of GAO employees are among its beneficiaries.

### A

At first blush, the language of Section 717(a) appears clearly to exclude GAO, since it purports to cover "all personnel actions affecting employees or applicants for employment . . . in executive agencies (*other than the General Accounting Office* . . . ." [35] Indeed, that was the conclusion reached by the District Court.[36] But Section 717(a) in terms also embraces all per-

---

**28.** Exec. Order No. 11246, 30 Fed.Reg. 12319 (1965). This was superseded in 1969 by Exec. Order No. 11478, 3 C.F.R., 1966–1970 Compilation, p. 803, *reprinted in* 42 U.S.C. § 2000e note at 1236 (1976).

**29.** See S.Rep.No. 415, 92d Cong., 1st Sess. 12–17, *reprinted in* Legislative History of the Equal Employment Opportunity Act of 1972, at 421–426 (Committee Print 1972) [parallel references hereinafter cited as Legislative History].

**30.** Pub.L.No. 92–261, 86 Stat. 103 (1972).

**31.** S.Rep.No. 415, 92d Cong., 1st Sess. 12, Legislative History, *supra* note 29, at 421.

**32.** Civil Rights Act of 1964, § 717(a), as added by Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(a) (1976).

**33.** Civil Rights Act of 1964, § 717(b), as added by Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(b) (1976). After submission of this appeal, the Civil Service Commission, as part of a reorganization of the Executive Branch, was replaced by the Office of Personnel Management and its duties with respect to nondiscrimination divided between the Equal Employment Opportunity Commission and the new Merit Systems Protection Board. See Civil Service Reform Act of 1978, Pub.L.No. 95–

454, § 7702, 92 Stat. 1140; Exec. Order No. 12067, 43 Fed.Reg. 28967, *reprinted in* 42 U.S.C.A. § 2000e note (West Supp.1979). Regulatory protections have not been substantively affected, however; the preexisting regulations have simply been readopted and redistributed, without significant change, in new sections of the Code of Federal Regulations. See 43 C.F.R. 60900 (1978). For ease of reference, I will cite to regulations as currently codified, but will continue to refer to the Civil Service Commission, since that is the body with which Lawrence would have dealt.

**34.** 5 C.F.R. §§ 713.201–713.222 (1978). These regulations now appear at 29 C.F.R. §§ 1613.-201–1613.222 (1979), as the function of overseeing agency efforts in this area now resides in the Equal Employment Opportunity Commission. See note 33 *supra*.

**35.** Civil Rights Act of 1964, § 717(a), as added by Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(a) (1976) (emphasis supplied), quoted in relevant part in text *supra* at note 32.

**36.** *Lawrence v. Staats, supra* note 16, at 3, J.App. 68.

sonnel actions "in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service,"[37] and GAO both is part of the Legislative Branch[38] and has many positions in the competitive service.[39] The apparent conflict between these two specifications of the same statutory clause forces us to look beyond the Act itself for an explanation of congressional intent.[40] And consideration of the legislative history of the Act's 1972 amendments[41] as well as the pattern of federal-employee coverage as a whole[42] convinces me that most GAO employees, including Lawrence, are entitled to the protections of Title VII.

**37.** See text *supra* at note 32.

**38.** Nowhere is this expressly stated, but GAO's position in the Legislative Branch is clear from its structure and responsibilities. GAO is an establishment "independent of the executive departments and under the control and direction of the Comptroller General of the United States." 31 U.S.C. § 41 (1976). Though appointed for 15-year terms by the President with the advice and consent of the Senate, 31 U.S.C. § 42 (1976), unlike executive officers both are removable solely by joint resolution of Congress or by impeachment. 31 U.S.C. § 43 (1976). The debates preceding enactment of the legislation establishing the GAO make it clear that Congress intended to create an auditing agency that would serve as an arm of Congress and would not be answerable to the Executive. See, *e. g.*, 61 Cong.Rec. 975 (1921) (remarks of Representative Snell); *id.* at 977 (remarks of Representative Fess); *id.* at 982 (remarks of Representative Good); *id.* at 985–986 (remarks of Representative Byrns); *id.* at 986 (remarks of Representative Bankhead); *id.* at 987 (remarks of Representative Sisson); *id.* at 1080 (remarks of Representative Good); *id.* at 1081, 1856 (remarks of Representative Byrns). In appropriating funds, Congress has consistently classified GAO as part of the Legislative Branch. See, *e. g.*, Legislative Branch Appropriations Act, Pub.L.No. 95–94, 91 Stat. 680 (1977).

For administrative reasons, GAO is often treated like an executive agency, and on occasion the distinction between legislative and executive has been blurred. See notes 43–45 *infra* and accompanying text. At other times, though, Congress has been careful to point expressly to the difference, while bowing to those same administrative necessities. Thus 31 U.S.C. § 46a (1976), which applies Executive Branch compensation provisions to employees of GAO, states (emphasis supplied):

Section 717(a) draws its definition of "executive agency"—from which it then excludes GAO—from 5 U.S.C. § 105, which states:

> For the purpose of this title, "Executive agency" means an Executive department, a Government corporation, and an independent establishment.[43]

"Independent establishment," in turn, is defined in 5 U.S.C. § 104 as

> (1) an establishment in the executive branch ... which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and

> This Act and any other general legislation enacted governing the employment, compensation, emoluments, and status of officers and employees of the United States shall apply to officers and employees of the General Accounting Office in the same manner and to the same extent *as if such officers and employees were in or under the executive branch* of the Government.

Several comments made during debate on the statutory provisions under construction here also support the position of GAO as a legislative agency. See notes 48–51 *infra* and accompanying text. Perhaps more important for our purpose, the Civil Service Commission itself has consistently considered GAO as part of the Legislative Branch. See United States Civil Service Commission Fiscal 1977 Annual Report 22 (1978) (listing federal civilian employment by branch and agency); Federal Personnel Manual at 212–3 (Aug. 27, 1979) (describing positions in GAO as "outside the executive branch").

**39.** Because most GAO employees are appointed subject to the civil service laws, see text at note 69 *infra*, the Civil Service Commission considers them to be in the competitive service unless a specific exception is made. See 5 C.F.R. § 212.101(a)(2) (1980). Only a few positions have been thus designated. See 5 C.F.R. §§ 212.3102, 212.3202 (1980).

**40.** See, *e. g.*, United States v. Donruss Co., 393 U.S. 297, 303, 89 S.Ct. 501, 504–505, 21 L.Ed.2d 495, 501 (1969).

**41.** See notes 48–58, 72–95 *infra* and accompanying text.

**42.** See notes 59–63, 68–71 *infra* and accompanying text.

**43.** 5 U.S.C. § 105 (1976).

(2) the General Accounting Office.[44]

So, at least for purposes of Title 5, which codifies the bulk of the laws dealing with governmental organizations and employees, GAO is clearly to be treated as an executive agency. If Congress had simply incorporated into Section 717(a) the Title 5 definition, GAO would just as plainly be an executive agency within the meaning of Title VII.

The only complication is that, after adopting the Title 5 definition, Section 717(a) expressly excepts GAO.[45] But this may well mean no more than that, for the purposes of Title VII, GAO is not to be treated *as an executive agency*, but rather as something else. Surely if other phraseology indicates an intention to include GAO in its proper character—*as an agency of the Legislative Branch*[46]—Title VII coverage is not precluded by the preceding limiting language. The fact is that in Section 717(a) Congress made Title VII applicable to "those units of the legislative . . . branch . . . having positions in the competitive service,"[47] and GAO certainly fits that description.

It may be that this general reference to inclusion of certain legislative units is not, standing on its own, compelling enough to overcome the specific exclusion of GAO appearing earlier. That possibility need not be explored, however, for the legislative history of Section 717(a) offers additional and persuasive evidence that exclusion of GAO from its provisions was not intended. The section-by-section analysis of the bill as reported by the Conference Committee and as finally enacted tells us that "[i]ncluded within [Section 717] coverage are executive agencies, . . . certain departments of the District of Columbia Government, *the General Accounting Office*, Government Printing Office and the Library of Congress."[48] Similar statements were made on two occasions during floor debate in the Senate. When Senator Cranston introduced an amendment to add an express reference to the Library of Congress in the statutory text, he justified the proposal by pointing out that the "legislative branch coverage in the bill is limited to 'positions in the competitive service' [which] would apply to both *the General Accounting Office* and the Government Printing Office—which are agencies of the Congress," but not to the Library of Congress, which has no competitive service positions.[49] GAO again merited mention when Senator Javits, during discussion of a proposed amendment seeking to bar coverage of state and local governmental workers "as long as Congress exempts its employees and the employees of its Members,"[50] stated that "employees of *the General Accounting Office* and the Printing Office, and perhaps some other housekeeping employees, are included within the ambit of the bill as it now stands" by virtue of the coverage of competitive service personnel in the Legislative Branch.[51]

### B

This analysis strongly indicates that Congress most likely intended to bring GAO employees under Title VII, and the statutory language is amenable to that result. Nonetheless, the fact that Section 717(a) refers at all to GAO in an exclusionary manner invites some explanation of why Congress effectuated its intent in precisely

44. 5 U.S.C. § 104 (1976).

45. See text *supra* at note 32.

46. See note 38 *supra*.

47. See text *supra* at note 32.

48. 118 Cong.Rec. 7169 (1972), Legislative History, *supra* note 29, at 1850–1851 (emphasis supplied).

49. 118 Cong.Rec. 4921 (1972), Legislative History, *supra* note 29, at 1723–1724 (emphasis supplied). Significantly, Senator Cranston's amendment was cosponsored by Senator Dominick, who was instrumental in the drafting and adoption of Section 717. 118 Cong.Rec. 4921, 4940 (1972), Legislative History, *supra* note 29, at 1723 (remarks of Senator Cranston), 1768 (remarks of Senator Williams).

50. 118 Cong.Rec. 4494 (1972), Legislative History, *supra* note 29, at 1635.

51. 118 Cong.Rec. 4499 (1972), Legislative History, *supra* note 29, at 1643 (emphasis supplied).

this manner. An inquiry into the origins of the language used [52] and the scope of the coverage accorded GAO [53] serves to elucidate why the suggested construction is not only permissible but most reasonable.

The principal model Congress had before it in drafting Section 717(a) was the executive order earlier promulgated to prod federal action to ensure equal employment opportunity for federal workers.[54] That order itself distinguished between Executive Branch agencies on the one hand and Legislative and Judicial Branch agencies on the other in language closely similar to that which Congress adopted in Section 717(a):

> This Order applies ... [to] executive agencies (other than the General Accounting Office) as defined in section 105 of title 5 ... [and] to those portions of the legislative and judicial branches of the Federal Government ... having positions in the competitive service *and to the employees in those positions.*[55]

The President thus had exercised his authority to liberate *all* executive-agency employees from discrimination, but had chosen to restrict coverage of employees in the coordinate branches to those holding positions in the competitive service, perhaps out of a desire to avoid undue interference with operation of the other arms of the Government. Because, aside from Government corporations, GAO was the only entity outside the Executive Branch included in the Title 5 definition of "executive agency," [56]

the executive order expressly, and quite logically, omitted GAO from the broader coverage granted employees in the Executive Branch, thus presumably leaving it for inclusion in the narrower protection accorded those in the Legislative and Judicial Branches.[57] Though by my reading Section 717(a) widens the scope of protection for these two branches,[58] the important point is that its provisions maintained a definitional distinction first appearing in the executive order.

Moreover, by first excluding GAO as an executive agency and then including it as part of the Legislative Branch, Congress was not simply engaging in a meaningless semantic exercise. What Congress did was grant GAO more restricted protection than it would have acquired had it been covered as though it were an executive agency. By the clear language of Section 717(a), *all* Executive Branch employees are protected from discrimination, no matter how they are appointed or whether they are assigned to competitive- or excepted-service positions.[59] In contrast, in my view only those employees in the Legislative and Judicial Branches who are appointed in accordance with the civil service laws—a category that includes personnel in both the competitive and the excepted services—receive Title VII protection.[60] In GAO, the Comptroller General and Deputy Comptroller General— the two highest officials [61] and thus the two

---

**52.** See notes 54–58 *infra* and accompanying text.

**53.** See notes 59–63 *infra* and accompanying text.

**54.** Exec. Order No. 11478, 3 C.F.R., 1966–1970 Compilation, p. 803, *reprinted in* 42 U.S.C. § 2000e note at 1236 (1976); see notes 26–28 *supra* and accompanying text.

**55.** Exec. Order No. 11478, 3 C.F.R., 1966–1970 Compilation, p. 803, § 6, *reprinted in* 42 U.S.C. § 2000e note at 1236 (1976) (emphasis supplied).

**56.** See text *supra* at notes 43–44.

**57.** The executive order gave no express indication whether competitive-service personnel in GAO were covered. The provision defining the

scope of the Civil Service Commission's regulations simply repeats the language of the executive order. See 29 C.F.R. § 1613.201(b) (1979). But since the President extended protection to *all* Executive Branch personnel and *all* competitive-service employees in the other two branches, it would make little sense to read the executive order as excluding everyone in GAO whether in the competitive or the excepted service.

**58.** See Part III *infra*.

**59.** See text quoted at note 32 *supra*.

**60.** See Part III *infra*.

**61.** 31 U.S.C. §§ 41–43 (1976).

most directly responsible to Congress [62] —would fall outside the purview of Title VII,[63] but all other employees would be covered. If, as I believe, Congress chose thus to insulate those most clearly acting as instrumentalities of legislative or judicial power, it is no wonder that Congress first expressly mentioned GAO in order to exclude it from the blanket coverage accorded "executive agencies" that are actually part of the Executive Branch.

### III

With GAO not entirely excluded from Title VII, it next must be determined exactly which employees within legislative and judicial agencies, including GAO, are entitled to invoke Title VII. Section 717(a) extends Title VII's protections to "[a]ll personnel actions affecting employees . . . in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service . . . ." [64] Appellants argue that this language includes *all* employees of a "unit" of the Legislative Branch—entire agencies such as GAO and the Government Printing Office—if *any* employees of that unit are in the competitive service.[65] Lawrence, on the other hand, contends that at most Section 717(a) covers *only* competitive-service personnel, and that as an employee in the excepted service he could not have benefited from Title VII.[66]

The phraseology of Section 717(a) tends to support appellants' interpretation since it speaks of "units," not "employees," "having positions in the competitive service." But "unit" is not an unambiguous term, and no conclusion can be safely drawn without further inquiry. After considering the legislative history of Section 717(a) and other relevant factors, I do not believe that either of the constructions proffered accurately reflects the statutory scheme. I conclude that "unit" refers to legislative or judicial employees whom Congress has placed as a group under the civil service laws, and with respect to whom Congress delegated to the Civil Service Commission [67] the responsibility for categorizing the positions as within either the competitive or the excepted service.[68] More particularly with regard to GAO, Congress has ordained that appointments of all of its employees, with the exception only of the Comptroller General and the Deputy Comptroller General, be made "in accordance with the civil service laws and regulations." [69] Pursuant to this directive, the positions of all but these two GAO employees *could* have been placed in the competitive service; instead, the Civil Service Commission has excepted certain GAO positions from the competitive service exactly as it has done for agencies in the Executive Branch.[70] Indeed, the regulation

---

**62.** See note 38 *supra.*

**63.** Because they are not appointed subject to the civil service laws. See notes 38 *supra,* 69 *infra* and accompanying text.

**64.** See note 32 *supra* and accompanying text.

**65.** Brief for Appellant at 8–11.

**66.** Brief for Appellee at 10–12.

**67.** As previously mentioned, *supra* note 33, subsequent to oral argument on this appeal the Civil Service Commission was reorganized, see Civil Service Reform Act of 1978, Pub.L.No.95-. 454, 92 Stat. 1111, and the classification functions previously exercised by the Commission are now performed by the Office of Personnel Management. Civil Service Reform Act of 1978, § 906(a)(2), 5 U.S.C.A. § 5105 (1980).

**68.** See note 70 *infra* for a description of the authorization and process for making such categorizations.

**69.** 31 U.S.C. § 52(b) (1976).

**70.** Pursuant to delegated authority, 5 U.S.C. §§ 3301–3302 (1976), the Civil Service Commission established rules respecting positions excepted from the competitive service. See generally 5 C.F.R. §§ 6.1–6.8 (1980). Excepted positions are designated according to whether they are "[p]ositions of a confidential or policy-determining character" (Schedule C), or positions of different character but "for which it is not practicable to examine" (Schedule A) or "for which it is not practicable to hold a competitive examination" (Schedule B). 5 C.F.R. § 6.2 (1980). Regulations classifying particular jobs in the excepted service according to these schedules appear at 5 C.F.R. pt. 213. Each policy-determining position to be excepted is listed individually. 5 C.F.R. §§ 213.3301–213.-3399 (1980). For Schedules A and B, however, the Commission excepts some positions for the entire executive civil service. 5 C.F.R. §§ 213.-

that makes Lawrence an excepted service employee is the very same one excepting employees in like positions elsewhere in the civil service.[71] Because, save for GAO's two top officials, Congress has thus treated all of its employees as a single "unit" in delegating personnel authority to the Civil Service Commission, the most logical reading of Section 717(a) is that Congress intended Title VII coverage for these "units," in their entirety, and not a coverage dependent upon the fortuity of the Commission's service classifications of their personnel.

An examination of the legislative history demonstrates that Congress did, indeed, intend Section 717(a) to encompass employees other than those in the competitive service. This can be seen by tracing the progress through Congress of the bill that ultimately became the Equal Opportunity Employment Act of 1972. It originated in the House of Representatives[72] and, as introduced and reported from committee, expressly provided that only competitive service positions in any of three Branches would receive Title VII coverage.[73] On the floor, even this limited protection was deleted when the House substituted the text of another bill, primarily in order to change the enforcement mechanism for Title VII claims against private employers.[74] The Senate bill,[75] which, as amended, later replaced in its entirety the version passed by the House,[76] provided much wider coverage for federal employees. As introduced, it included noncompetitive service personnel in

3102, 213.3202 (1980). Lawrence, an attorney, is among the generally exempt employees under Schedule A. See 5 C.F.R. § 213.3102(d) (1980).

Under the interpretation I suggest, see text *supra* at notes 67–69, employees in a "unit" would be covered by Title VII even if the Commission exercised its discretion by placing *all* positions in that unit in the excepted service. This may appear a bit anomalous since Section 717(a) refers to "units ... *having* positions in the competitive service" (emphasis supplied). But, as described above, the Commission categorizes jobs according to general regulations applicable to all employees; consequently it is improbable that all would fall within the excepted service. More importantly, Congress chose to consider a particular group of employees as subject to Civil Service Commission jurisdiction exactly to the same extent as a similar group of Executive Branch personnel, and would likely have done so with the expectation that at least some members of the "unit" would, as a result, receive the more extensive protection available to competitive service staff. See generally 5 U.S.C. §§ 3302–3322 (1976); Civil Service Reform Act of 1978, § 204(a), 92 Stat. 1134, 5 U.S.C.A. §§ 7501–7514 (1980). The exact manner in which the Commission treats the affected individual is less crucial.

**71.** See 5 C.F.R. § 213.3102(d) (1979); note 70 *supra*.

**72.** H.R. 1746, 92d Cong., 1st Sess. (1971), Legislative History, *supra* note 29, at 1 (introduced Jan. 22, 1971).

**73.** H.R. 1746, 92d Cong., 1st Sess. § 717(a) (1971); see H.R.Rep.No. 238, 92d Cong., 1st Sess. 56 U.Code Cong. & Admin.News 1972,

2137 (1971), Legislative History, *supra* note 29, at 116. The pertinent section stated:

All personnel actions affecting employees or applicants for employment in the competitive service (as defined in section 2102 of title 5 of the United States Code) ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.

**74.** The dispute resulting in the substitution centered, not on the nature of equal employment protection for federal workers, but on whether the Equal Employment Opportunity Commission should be given authority to issue cease and desist orders or should instead be required to take cases of discrimination to court in the first instance. See 117 Cong.Rec. 31958–31985, 32088–32113 (1971), Legislative History, *supra* note 29, at 191–324. The substituted version chose the latter option. H.R. 9247, 92d Cong., 1st Sess. (1971), Legislative History, *supra* note 29, at 141. By not referring to federal employees, the substituted bill would have left authority for promoting equal employment opportunity in the federal workforce with the Civil Service Commission, where it already resided pursuant to the Civil Rights Act of 1964, § 701(b), and Executive Order 11246, see notes 27–28 *supra* and accompanying text. The original bill, H.R. 1746, *supra* note 72, would have transferred this function to the Equal Employment Opportunity Commission.

**75.** S. 2515, 92d Cong. 1st Sess. (1971), Legislative History, *supra* note 29, at 157.

**76.** 118 Cong.Rec. 4938–4939, 4944, 4948 (1972), Legislative History, *supra* note 29, at 1764–1766, 1778–1779, 1789–1790.

the Executive Branch,[77] and, also in contrast to the plainly more restrictive language of the original House bill,[78] seemed to protect noncompetitive personnel in the Legislative and Judicial Branches as well:

> All personnel action affecting employees . . .. in those portions of the Government of the District of Columbia, and the legislative and judicial branches of the Federal Government having positions in the competitive service, shall be made free from any discrimination . . . . [79]

This can be seen yet more clearly by comparing the language in the Senate bill with that in the executive order upon which it appears to have been modeled,[80] which by its terms applied to "those portions of the legislative and judicial branches of the Federal Government . . . having positions in the competitive service *and to the employees in those positions.*"[81] While the executive order thus constrained coverage in the Legislative Branch to employees actually holding competitive service positions, the limiting language was omitted from the version proposed in the Senate.

As reported out of committee, Section 717(a) was largely unchanged; although the word "units" had been substituted for "portions," the sense of the bill remained constant.[82] It was amended one more time—on the floor of the Senate—when Senator

Cranston proposed changes to expand it to include the Library of Congress, characterizing the bill offered by the committee as confining "legislative branch coverage . . . to 'positions in the competitive service.' "[83] While this statement, standing alone, might be taken as support for a restrictive interpretation, the Senator went on to say that "[a]lthough this would apply to both *the General Accounting Office* and the Government Printing Office—which are agencies of the Congress, it would not apply to the Library of Congress which does not have positions in the competitive service and is not generally bound by the Federal personnel manual."[84] His references to GAO and the Government Printing Office appear to encompass their entire complements of employees, or at least those in positions "generally bound by the Federal personnel manual," and not simply competitive service employees.[85] Indeed, it would be puzzling if Congress chose to include *all* Library of Congress employees under Title VII, but restrict coverage at GAO and the Government Printing Office to competitive service personnel alone.

While I thus would find that Congress did not intend to exclude all excepted service employees, a number of other concerns expressed by Senator Cranston, and evident in

**77.** S. 2515, 92d Cong., 1st Sess. § 11 (1971), Legislative History, *supra* note 29, at 185–186 (barring discrimination with respect to "[a]ll personnel actions affecting employees . . . in executive agencies (other than the General Accounting Office) as defined in section 105 of title 5, United States Code").

**78.** See note 73 *supra.*

**79.** S. 2515, 92d Cong., 1st Sess. § 11 (1971), Legislative History, *supra* note 29, at 185–186.

**80.** See notes 54–55 *supra* and accompanying text.

**81.** Exec. Order No. 11478, 3 C.F.R., 1966–1970 Compilation, p. 803, § 6, *reprinted in* 42 U.S.C. § 2000e note at 1236 (1976) (emphasis supplied).

**82.** S. 2515, 92d Cong., 1st Sess. § 11 (1971), Legislative History, *supra* note 29, at 405–406 (as reported from committee):

> All personnel actions affecting employees or applicants for employment . . . in executive agencies (other than the General Accounting Office) as defined in section 105 of title 5, United States Code . . ., in those units of the Government of the District of Columbia having positions in the competitive service, and in the legislative and judicial branches of the Federal Government having positions in the competitive service, shall be made free from any discrimination. . . .

**83.** 118 Cong.Rec. 4921 (1972), Legislative History, *supra* note 29, at 1723–1724.

**84.** *Id.* (emphasis supplied).

**85.** Even those employees whose positions are designated by the Civil Service Commission as in the excepted service are otherwise under the jurisdiction of the Commission and are subject to the Federal Personnel Manual. See generally Federal Personnel Manual, ch. 302; note 70 *supra.*

the adoption of the amendments concerning the Library of Congress, indicate why Congress also may not have intended to include all of them. Because the Library of Congress is an instrumentality of Congress, that body was loathe to yield to the Civil Service Commission—an executive agency—control over employment practices in the Library.[86] Thus the Librarian himself was given final authority over equal opportunity efforts so as not to "inva[de] . . . the statutory authority of the Librarian to appoint employees of the Library 'solely with reference to their fitness for their particular duties.' "[87] Most GAO employees, in contrast, are to be appointed "in accordance with the civil service laws and regulations,"[88] a procedure that narrows the discretion of the appointing authority.[89] In the exceptional instances in which Congress did not delegate authority to the Civil Service Commission in this manner, it may be supposed that Congress preferred to treat the affected officials and employees—like the Library of Congress staff—as representing most directly the will of the Legislative and Judicial Branches, and accordingly sought to insulate them from intrusion by the Executive Branch, even with respect to Title VII enforcement. In GAO, this category would include only the Comptroller General and Deputy Comptroller General, who are appointed by the President but are subject to removal only by joint resolution of Congress or by impeachment.[90] Similar divisions of authority appear in statutes establishing other legislative and judicial units having some employees under the control of the Civil Service Commission.[91]

Support for this distinction is found in the report accompanying the Senate bill when it left committee, which stated that "[a]ll employees subject to the executive branch and Civil Service Commission control or protection are covered by this section."[92] By providing that certain appointments in the Legislative Branch are to be made in accordance with civil service laws and regulations, as are the hiring decisions

86. 118 Cong.Rec. 4921 (1972), Legislative History, *supra* note 29, at 1724.

87. *Id.,* citing and quoting 2 U.S.C. § 140 (1970); see Civil Rights Act of 1964, § 717(b), as amended by Equal Employment Opportunity Act of 1972, § 11, 42 U.S.C. § 2000e–16(b) (1976).

88. 31 U.S.C. § 52(b) (1976).

89. Except for those requiring advice and consent of the Senate, all appointments made pursuant to the civil service laws, whether to the competitive or excepted service, are subject to restrictions on the manner of selection. See 5 U.S.C. §§ 3308–3318 (1976) (describing selection process for competitive service); 5 U.S.C. § 3320 (1976) (applying §§ 3308–3318 to excepted-service appointments in the executive branch); 5 U.S.C. § 3320 note (1976) (historical and revision notes indicating application of this section to GAO by virtue of 31 U.S.C. § 52 (1976)).

90. 31 U.S.C. § 43 (1976).

91. For example, the Director and Deputy Director of the Administrative Office of the United States Courts are appointed and are subject to removal by the Supreme Court. 28 U.S.C. § 601 (1976). Prior to 1978, all other employees were appointed by the Director "subject to the civil service laws . . .," 28 U.S.C. § 602 (1976), and thus would have constituted a "unit" covered by Title VII. That provision has now been amended. See Court Interpreters Act, Pub.L.No.95–539, 92 Stat. 2044, 28 U.S. C.A. § 602(a) (West Supp.1980). Similarly, the Director of the Federal Judicial Center is appointed by a Board composed of judges and the Director of Administrative Office of the United States Courts. 28 U.S.C. §§ 621, 624(1) (1976). The Director of the Federal Judicial Center, in turn, hires professional staff without regard to civil service restrictions, 28 U.S.C. § 625(b) (1976), and consequently, under my interpretation of Section 717(a), without Title VII protection. Secretarial and clerical personnel, on the other hand, are engaged "subject to the provisions . . . governing appointments in competitive service and the provisions . . . relating to classification and General Schedule pay rates," 28 U.S.C. § 625(c) (1976), and they would be included under Title VII.

92. S.Rep.No.415, 92d Cong., 1st Sess. 45 (1971), Legislative History, *supra* note 29, at 454. The report also stated, in even greater breadth, that the section "mak[es] clear the obligation of the Federal Government to make all personnel actions free from discrimination. . . ." *Id.* at 12, Legislative History, *supra* note 29, at 421.

at GAO, Congress subjected these employees to the authority normally exercised by the Civil Service Commission, whether the positions themselves are ultimately classified as competitive or excepted service.[93] A holding that all of these GAO employees are protected by Title VII would thus be fully consistent with the intent expressed in the Senate report.

Two other references to coverage for Legislative and Judicial Branch agencies appear in the legislative history. The section-by-section analysis of the final Senate bill, prepared by Senator Williams, its primary sponsor, declares that *"[a]ll employees of any agency, department, office or commission having positions in the competitive service are covered by"* Section 717.[94] The corresponding analysis accompanying the bill when it emerged unchanged from conference similarly states that it includes "executive agencies, . . . certain departments of the District of Columbia Government, *the General Accounting Office*, Government Printing Office and the Library of Congress."[95] Though neither is precise enough to pinpoint the proper interpretation of Section 717(a), both indicate a broad sweep to intended coverage of agencies such as GAO.

Because Congress thus chose to treat some groups of legislative and judicial employees exactly as Executive Branch employees are treated,[96] I would hold that all of these employees, whether excepted or competitive service, are covered by Title VII. The legislative history, though inconclusive at some points, is much more consistent with this reading. And while a few decisions have touched on the point in passing and have indicated a construction that would exclude excepted-service employees, none was called upon to make a critical examination of the issue, and none relied on such an interpretation to reach its holding.[97]

I remain advertent to "the oft-repeated statement that Title VII is remedial in character and should be liberally construed to achieve its purposes."[98] The legislative history of the 1972 amendments to Title VII is replete with references to the crucial importance of eradicating employment dis-

---

**93.** See notes 70–71, 91 *supra* and accompanying text.

**94.** 118 Cong.Rec. 4943 (1972), Legislative History, *supra* note 29, at 1777 (emphasis supplied).

**95.** 118 Cong.Rec. 7169 (1972), Legislative History, *supra* note 29, at 1851 (emphasis supplied).

**96.** See notes 69–71 *supra* and accompanying text.

**97.** In *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), a terminated employee of Congress filed suit against a former Congressman, alleging employment discrimination based on gender and predicating her claim to relief on the Due Process Clause of the Fifth Amendment. The Court found that she could maintain a cause of action implied from that constitutional provision, in part because "[s]ince petitioner was not in the competitive service . . . the remedial provisions of § 717 of Title VII are not available to her." *Id.* at 247 n.26, 99 S.Ct. at 2278 n.26, 60 L.Ed.2d at 864 n.26. The Court also noted that "[w]hen § 717 was added to Title VII to protect federal employees from discrimination, it failed to extend this protection to congressional employees such as petitioner who are not in the competitive service." *Id.* at 247, 99 S.Ct. at 2278, 60 L.Ed.2d at 864. These statements could be taken as the reflection of a view that only competitive-service personnel receive Title VII coverage. But, unlike the situation with respect to GAO, none of the statutory authorizations for employees of Congress has placed them under the jurisdiction of the Civil Service Commission, see generally 2 U.S.C. §§ 60–1 to 130d (1976); consequently, no congressional employees are or could be in the competitive service and § 717(a) thus cannot apply to any of them. Surely the Court did not consider whether treatment would differ for an agency of the Legislative Branch in which some employees do hold positions in the competitive service.

In *Bethel v. Jefferson, supra*, note 3, the issue facing this court was the relationship between Section 717 and Section 706, 42 U.S.C. § 2000e-5 (1976), the latter provision pertaining to state and local governmental employment. We observed there that the Act "expressly exempts noncompetitive-service employees of the Judicial and Legislative Branches . . . ," 191 U.S.App.D.C. at 114 n.29, 589 F.2d at 637 n.29, but our decision neither focused nor depended upon that remark.

**98.** *Coles v. Penny*, 174 U.S.App.D.C. 277, 283, 531 F.2d 609, 615 (1976).

crimination from the Federal Government.[99] Although some federal workers are clearly left without Title VII protection—notably employees of Members of Congress themselves[100]—for me the conclusion is inescapable that, with few exceptions, Congress intended to accord all federal employees "the same rights and impartial treatment which the law seeks to afford employees in the private sector."[101] I believe the interpretation expounded herein best serves that end.

## IV

That brings me to the one problem remaining. Federal employees must exhaust available administrative remedies before taking their Title VII claims into court,[102] and Lawrence did not seek an administrative solution. Arguably, then, his suit was premature and, to make matters worse, presentation of his grievance to his agency is now time-barred.[103] While it undoubtedly would have been safer to lodge an administrative complaint, I am not persuaded that Lawrence has forfeited his Title VII judicial remedy for the alleged discrimination.

In *Bethel v. Jefferson*,[104] we concluded that the parallel administrative filing requirements for state and local government employees[105] are not jurisdictional in the strict sense, and that equitable considerations might play an alleviating role in deserving cases.[106] There was grave uncertainty in *Bethel* as to the proper route to administrative redress and, unfortunately, the employees there complaining had chosen and carefully followed the path we later found to be wrong.[107] We held that, in those circumstances, the time limit for compliance by the employees was tolled until the appropriate procedure was first made clear.[108]

Lawrence's situation did not differ essentially from that in *Bethel.* The language of Section 717(a) was equivocal, and on its face seemed as likely to deny as to confer Title VII rights.[109] Before Lawrence brought his action, the Civil Service Commission had instructed GAO, as well as at least one of its employees, that its excepted service personnel were not among those secured by the Commission's regulations implementing Title VII,[110] and GAO had so informed its equal employment opportunity counsel-

**99.** See, *e. g.*, H.R.Rep.No.238, 92d Cong., 1st Sess. 22–23, Legislative History, *supra* note 29, at 82–83, U.S.Code Cong. and Admin.News 2157–2158 ("[t]he Federal service is an area where equal employment opportunity is of paramount significance. . . . It is therefore imperative that equal opportunity be the touchstone of the Federal system. . . . Accordingly there can exist no justification for anything but a vigorous effort to accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector."); S.Rep.No.415, 92d Cong., 1st Sess. 12, Legislative History, *supra* note 29, at 421 ("[t]he bill adds . . . a new section . . . making clear the obligation of the Federal Government to make all personnel actions free from discrimination. . . . [The] policies, actions, and programs [of the Federal Government] strongly influence the activities of all other enterprises, organizations and groups. In no area is government action more important than in the area of civil rights.").

**100.** See note 97 *supra*.

**101.** H.R.Rep.No.238, 92d Cong., 1st Sess. 23, Legislative History, *supra* note 29, at 83.

**102.** 42 U.S.C. § 2000e–16(c) (1976); see *Brown v. GSA, supra* note 23, 425 U.S. at 835, 96 S.Ct. at 1968, 48 L.Ed.2d at 413.

**103.** See 29 C.F.R. § 1613.214 (1979).

**104.** *Supra* note 3.

**105.** 42 U.S.C. § 2000e–5(e) (1976) (imposing a deadline of 180 days on filing of charges with the Equal Employment Opportunity Commission).

**106.** *Bethel v. Jefferson, supra* note 3, 191 U.S. App.D.C. at 117–120, 589 F.2d at 640–643. See also *Laffey v. Northwest Airlines, Inc.*, 185 U.S. App.D.C. 322, 367–368, 567 F.2d 429, 474–475 (1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

**107.** *Bethel v. Jefferson, supra* note 3, 191 U.S. App.D.C. at 117–118, 589 F.2d at 640–641.

**108.** *Id.* at 120, 589 F.2d at 643.

**109.** See notes 35–39 *supra* and accompanying text; *Lawrence v. Staats, supra* note 16, at 1–3, J. App. 66–68.

**110.** J. App. 40–41.

ors.[111] Lawrence was aware of this interpretation at the time he sought judicial redress,[112] and although GAO continued to argue the contrary position,[113] the Commission did not change its mind until after the suit was instituted.[114] After meticulous examination of the legislative history of Section 717(a) I am now prepared to say that Lawrence is covered by Title VII, and therefore could have sought relief from GAO under that provision, but that was far from clear when he really needed to know.

No less here than in *Bethel*, it would better suit the remedial purposes of Title VII to now afford Lawrence the opportunity to pursue his claim before GAO.[115] It is noteworthy that, during the course of proceedings in the District Court, counsel for GAO offered to do just that.[116] I need not go so far as to say that, because the deadline for an administrative filing of that sort is imposed by regulation,[117] and not as in *Bethel* by statute, GAO is in position to waive it.[118] The important thing for me is that the agency's willingness to do so strengthens my conviction that equitable factors militate against any time-barring of an effort to procure administrative relief. Accordingly, I would remand to the District Court with directions to grant Lawrence leave to promptly invoke GAO's Title VII grievance procedure, and to retain jurisdiction pending exhaustion.[119]

111. J. App. 86–87. It is true that throughout this period GAO maintained a grievance system for processing discrimination complaints. But as noted in a memorandum to the counselors, employees had no right to a Civil Service Commission hearing or appeal, and it was "a complicated legal question as to whether they can file a civil action" if dissatisfied with GAO's response to their claims. J.App. 86–87.

112. See J. App. 11, 16A.

113. After being informed of the Commission's position, GAO wrote to the Commission, arguing that excepted service workers were entitled to Title VII coverage and requesting a ruling on that issue. J.App. 14b.

114. J. App. 25–26.

115. Compare *Bethel v. Jefferson, supra* note 3, 191 U.S.App.D.C. at 119–120, 589 F.2d at 642–643.

116. J.App. 15b–17b.

117. See 29 C.F.R. § 1613.214 (1979).

118. The regulation was promulgated by the Civil Service Commission pursuant to authority granted by § 717(b), 42 U.S.C. § 2000e–16(b) (1976). See 37 Fed.Reg. 22717 (1972).

119. Faced with GAO's charge that he failed to exhaust administrative remedies, Lawrence at one point evinced a desire to abandon his Title VII claim and proceed exclusively on his constitutionally-based theories of relief. J. App. 6b. He recognized that he could more easily prove discrimination under Title VII, but seemed inclined to forego that effort in court largely because it was unclear whether he was entitled to Title VII protection, and because he feared that GAO would in any event dismiss his grievance for failure to file it within the 30-day limit. J.App. 9b. Title VII reflects a congressional preference for the more informal conciliation-oriented administrative forum. *Richerson v. Jones*, 572 F.2d 89, 97 (3d Cir. 1978); see *Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 404–405, 520 F.2d 108, 136–137 (1975) and it is not at all certain that he can predicate a suit on the Fifth Amendment when he has a parallel remedy under Title VII. See *Brown v. GSA, supra* note 23. In any event, Lawrence can no more pursue the constitutional than the Title VII course without first exhausting his administrative remedies. "[T]he very fact that constitutional issues are put forward constitutes a strong reason for not allowing . . . suit either to anticipate or to take the place of [agency action]," *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 772, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1947); see *Wallace v. Lynn*, 165 U.S.App.D.C. 363, 367, 507 F.2d 1186, 1190 (1974); "a strong showing is required, both of inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process." *Aircraft & Diesel Equip. Corp. v. Hirsch, supra*, 331 U.S. at 773–774, 67 S.Ct. at 1503–1504, 91 L.Ed. at 1809. Since Lawrence cannot make that showing, he must in any event utilize available GAO procedures before his Fifth Amendment claim would be ripe for judicial consideration.