Alfonso J. TORRE, Appellant,

v.

Marion BARRY, Jr., Individually and as
Mayor of the District of Columbia,
et al.

No. 80–1400.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 26, 1981.
Decided Aug. 4, 1981.

Jeremiah A. Collins, Washington, D.C., with whom George H. Cohen and Michael H. Gottesman, Washington, D. C., were on brief for appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, David P. Sutton and Martin L. Grossman, Asst. Corp. Counsel, Washington, D. C., were on brief for appellees.

Before ROBINSON, Chief Judge, and ROBB and WALD, Circuit Judges.

Opinion for the court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

The appellant Torre, a twenty-three year veteran of the District of Columbia Fire Department, brought this action against the District of Columbia, its Mayor, and its City Administrator. Torre, a white man, alleged that the failure of the defendants to approve his recommended promotion from Battalion Fire Chief to Deputy Fire Chief was based on his race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1976),[1] and the equal protection component of the Fifth Amendment's Due Process Clause. The District Court dismissed the action, believing that Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1976 & Supp. III 1979), provided the exclusive federal remedy for racial discrimination in employment by the District of Columbia. We think however that the court's conclusion rests on an erro-

---

1. Section 1981 provides:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   42 U.S.C. § 1981 (1976). The Supreme Court has held that section 1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 295, 96 S.Ct. 2574, 2586, 49 L.Ed.2d 493 (1976). Thus, the protections afforded by that provision are available to white persons. *Id.* at 296, 96 S.Ct. at 2586.

neous interpretation of the pertinent Title VII provisions and the intent of Congress when it enacted the 1972 amendments to Title VII. Accordingly we reverse.

Title VII of the Civil Rights Act of 1964 originally provided a remedy for employment discrimination only in the private sector. See Pub. L. No. 88–352, Title VII, § 701, 78 Stat. 241 (1964). The Equal Employment Opportunity Amendments of 1972 significantly expanded the reach of Title VII by including state and local governmental units within the definition of "employer" for purposes of the Act, see Pub. L. No. 92–261, § 2, 86 Stat. 103 (1972), and by adding a new section 717 to the 1964 Act to provide federal employees with a statutory remedy for employment discrimination. See id. at section 11. 42 U.S.C. §§ 2000e(a), (b) & 2000e–16. Torre did not invoke the provisions of Title VII, but chose instead to file suit under section 1981 and the Fifth Amendment. To determine whether he was free so to choose, we must examine two aspects of Title VII coverage: (1) the exclusivity of Title VII as a remedy for federal employees covered by section 717 and for non-federal employees, whose principal remedies for job-related discrimination are set forth in section 706, 42 U.S.C. § 2000e–5; and (2) the status of District of Columbia employees under sections 706 and 717.

1. *Exclusivity of Title VII, Sections 706 and 717*

In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court held that section 706 of Title VII is not the exclusive remedy for claims of employment discrimination in the private sector and that resort to administrative machinery under Title VII is not a prerequisite to an action under section 1981. *Id.* at 460–61, 95 S.Ct. at 1720–21. This holding was derived primarily from an examination of the legislative history of Title VII, which demonstrated to the Court that Congress intended to allow aggrieved persons to pursue independently their rights under both section 706 of Title VII and other applicable state and federal statutes. The Court pointed to language in the House Report on the 1972 amendments reflecting the understanding of Congress that neither the 1964 Act nor the 1972 amendments thereto had preempted any existing rights: "'[T]he remedies available to the individual under Title VII are co-extensive with the indiv[i]dual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and ... the two procedures augment each other and are not mutually exclusive.'" 421 U.S. at 459, 95 S.Ct. at 1719, *quoting* H.R. Rep. No. 92–238, 92d Cong., 1st Sess. 19 (1971).

Although the Johnson case involved alleged discrimination by a private employer, Congress clearly expressed its intention also to allow state and local government employees to seek relief under either Title VII or the older Civil Rights Acts. Indeed, in the same House Report relied upon by the Supreme Court, the House Committee on Education and Labor stated:

In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected..... The bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.

H.R.Rep.No.92–238, *supra*, at 18–19, U.S. Code Cong. & Admin.News 1972, p. 2137, 2154. The availability of alternative remedies was underscored by the Senate's consideration and rejection of an amendment that would have deprived a complainant of any right to sue under section 1981. 118 Cong. Rec. 3368–3373 (1972); *Johnson, supra*, 421 U.S. at 459, 95 S.Ct. at 1719. Several federal district courts have confirmed, since the *Johnson* case was decided, that employees of state and local governmental units may use either Title VII or section 1981 to remedy job-related racial discrimination. *See, e. g., Stewart v. City of Pontotoc*, 461 F.Supp. 767, 776–77 (N.D.Miss. 1978); *Stewart v. Wappingers Central School District*, 437 F.Supp. 250, 252–53 (S.D.N.Y.1977); *Balmes v. Board of Education*, 436 F.Supp. 129, 133 (N.D. Ohio 1977).

The situation of federal employees covered by section 717 of Title VII is different. The Supreme Court has held squarely that section 717 "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). The Court held that the *Johnson* case was distinguishable:

> In *Johnson* the Court held that in the context of *private employment* Title VII did not preempt other remedies. But that decision is inapposite here. In the first place, there were no problems of sovereign immunity in the context of the *Johnson* case. Second, the holding in *Johnson* rested upon the explicit legislative history of the 1964 Act which " 'manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.' "
>
> \*    \*    \*    \*    \*    \*
>
> There is no such legislative history behind the 1972 amendments. Indeed, as indicated above, the congressional understanding was precisely to the contrary.

425 U.S. at 833–34, 96 S.Ct. at 1968–69 [emphasis in original]. The Court also concluded that the "balance, completeness, and structural integrity" of section 717's administrative and judicial enforcement mechanisms evinced Congress' intention to preclude all other forms of relief. *Id.* at 832–33, 96 S.Ct. at 1967–68. Therefore, a federal employee who is covered by section 717 may not sue under section 1981 or the Fifth Amendment. *See Richardson v. Wiley*, 186 U.S.App.D.C. 309, 310, 569 F.2d 140, 141 (1977). Thus, to decide in the present case whether the appellant Torre could bring his race discrimination suit under section 1981 or whether that action was precluded by the 1972 amendments to Title VII, we must determine the status of employees of the District of Columbia Fire Department under Title VII.

2. *The Status of District of Columbia Employees under Title VII*

Congress recognized two categories of District of Columbia employees in the 1972 amendments to Title VII. First, section 717 of the Act applies to "employees . . . in those units of the Government of the District of Columbia having positions in the competitive service." 42 U.S.C. § 2000e–16(a). In contrast, section 706 applies to employers as defined in the Act, but the term "employer" by definition does not include "any department or agency of the District of Columbia subject by statute to procedures of the competitive service." 42 U.S.C. § 2000e(b)(1) (1976). Although section 706 does not, in positive terms, apply to employees of the District of Columbia who are not in the competitive service, this court has held that 706 does indeed apply to them. *Bethel v. Jefferson*, 191 U.S.App.D.C. 108, 115–17, 589 F.2d 631, 638–40 (1978). Thus, the court in the *Bethel* case held specifically that members of the District of Columbia Metropolitan Police Department are covered by section 706, rather than section 717, because the Department is not subject to the full panoply of competitive service requirements and because no statute designates officers of the Department as holders of positions in the competitive service. *Id.* at 117, 589 F.2d at 140. The same result must be reached with respect to the members of the District of Columbia Fire Department. The Federal Personnel Manual, as revised August 27, 1979, specifies the status of these employees:

> *Positions in the District of Columbia Government.* District of Columbia Government positions are municipal rather than Federal and are outside the competitive service unless specifically included, even though some of them must be filled under civil service regulations and even though OPM [Office of Personnel Management, the successor to the Civil Service Commission] examines for the positions. *OPM conducts examinations, for example, for appointment and promotion for most positions in the Police and Fire Departments but these positions are not in the competitive service.*

*Id.* at 212–4 [emphasis added].

This excerpt makes clear that members of the District of Columbia Fire Depart-

ment are the counterparts of employees of state and local governmental units, rather than federal employees. It follows that they are covered by section 706 of Title VII, rather than section 717, and they retain an independent right of action under section 1981. This right of action, moreover, is not dependent on initial resort to Title VII's administrative procedures. *Johnson, supra,* 421 U.S. at 461, 95 S.Ct. at 1720–21; *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 86, 478 F.2d 979, 996 (1973); *Saad v. Burns International Security Services, Inc.,* 456 F.Supp. 33, 37 (D.D.C. 1978). The District Court therefore erred in dismissing the appellant's section 1981 action either on the ground that Title VII provided the exclusive judicial remedy for his claim of racial discrimination or on the ground that racial discrimination or on the ground that Torre impermissibly "circumvented the administrative process prescribed for District of Columbia government employees." Memorandum Opinion at 4. Accordingly we reverse and remand the case for further proceedings not inconsistent with this opinion.

*So ordered.*