JePhunneh LAWRENCE

v.

Elmer B. STAATS, Comptroller General of the United States General Accounting Office, et al., Appellants.

No. 78–1015.

United States Court of Appeals, District of Columbia Circuit.

Sept. 11, 1981.

As Amended Sept. 22, 1981.

On Petition for Rehearing.

Before ROBINSON, Chief Judge, MacKINNON, Circuit Judge, and PRATT *, District Judge, United States District Court for the District of Columbia.

ORDER

This matter is presently before the Court for consideration of appellants' petition for rehearing. On consideration thereof, it is

ORDERED, by the Court, that the petition for rehearing is denied for the reasons set forth in the attached opinion. A dis-

---
* Sitting by designation pursuant to Title 28

senting opinion by Chief Judge Robinson is also attached.

PER CURIAM:

In May, 1977, appellee JePhunneh Lawrence, a former excepted service employee of the General Accounting Office (GAO), filed suit in the district court alleging that the GAO had discriminated against him on account of his race. Lawrence requested money damages and injunctive relief pursuant to Title VII and the equal protection guarantee of the Fifth Amendment. Appellants GAO and the Civil Service Commission (CSC) responded with a motion to dismiss the action in its entirety. They argued that Lawrence's Fifth Amendment claim should be dismissed because Title VII constitutes the exclusive judicial remedy for claims of racial discrimination arising out of federal employment. Lawrence's Title VII claim was barred, they asserted, because Lawrence had failed to exhaust the administrative remedies available to him through either the GAO or the CSC. Lawrence replied that his failure to exhaust administrative remedies was irrelevant because Title VII simply did not apply to him as an excepted service employee of the GAO. He thus contended that he should be allowed to pursue his constitutional claim. The district court held that Title VII did not apply to the GAO at all, and denied the motion to dismiss. This ruling removed Lawrence's Title VII claim from the case, but left him free to proceed on his Fifth Amendment claim.

At that time, Title VII provided:

All personnel actions affecting employees . . . in executive agencies (*other than the General Accounting Office*) as defined in Section 105 of Title 5 . . . and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–16(a) (emphasis added). The district court construed this statute as indicating a Congressional intent to treat

---
U.S.C. § 292(a).

the GAO as an executive agency for the purposes of Title VII, since the GAO clearly was an executive agency as defined in 5 U.S.C. § 105. But because the statute prohibited discrimination in "executive agencies (*other than the General Accounting Office*)" (emphasis added), the court concluded that the GAO was entirely exempt from the reach of Title VII by virtue of the parenthetical clause italicized above.

At appellants' request, the district court certified its order denying the motion to dismiss to this court for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The district court reasoned that whether Title VII applied to Lawrence constituted a controlling question of law because "[w]ere Title VII found to be applicable, the court would be constrained to dismiss the case due to plaintiff's failure to exhaust administrative remedies." A motions panel of this court subsequently granted appellants' petition for permission to bring an interlocutory appeal.

On February 5, 1981, this court issued an opinion in the case holding that although Title VII applied to the GAO, it did not apply to Lawrence as an excepted service employee. We therefore affirmed the order of the district court denying the motion to dismiss. *Lawrence v. Staats,* 640 F.2d 427 (D.C.Cir.1981). We agreed that the GAO was an executive agency under 5 U.S.C. § 105, and noted that the plain language of § 2000e–16(a) extended Title VII coverage to all employees of executive agencies as so defined. We determined, however, that the parenthetical clause "(other than the General Accounting Office)" did not evince a Congressional intent to exclude the GAO completely from the reach of Title VII, but indicated only that the GAO was not to be considered as an executive agency for purposes of Title VII. Looking to the legislative history of the statute, and recognizing that the GAO was in reality a part of the legislative branch of government, we concluded that the language in § 2000e–16(a) granting protection to "employees ... in those units of the legislative ... branch [ ] of the Federal Government having positions in the competitive service" brought the GAO within Title VII. We also concluded, however, that such legislative branch coverage extended only to employees who held positions in the *competitive service.* Because Lawrence served in the "excepted service", we held that Title VII did not apply to him. Accordingly, the cause was remanded to the district court for further proceedings consistent with our opinion.

■ Appellants have now petitioned for rehearing, citing a provision of the General Accounting Office Personnel Act of 1980, Pub.L. No. 96–191, 94 Stat. 27 (the 1980 Act), which deleted the parenthetical clause "(other than the General Accounting Office)" from the language in 42 U.S.C. § 2000e–16. *See* Pub.L. No. 96–191, § 8(g), 94 Stat. 34. Appellants correctly point out that under Title VII as it now stands, the GAO *is* treated as an executive agency, and all employees of the GAO, including an excepted service employee such as Lawrence, are entitled to invoke its protections. Appellants argue that we should give this amendment retroactive effect, and remand this case for proceedings under Title VII. We decline, however, to require Lawrence in effect to return to square one and start over.

■ It is true that as a general rule an appellate court applies the law in effect at the time it renders its decision. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Coca-Cola Co. v. FTC,* 642 F.2d 1387 (D.C.Cir.1981). Since the 1980 Act became effective on October 1, 1980, *see* Pub.L. No. 96–191, § 10(a), 94 Stat. 34, approximately four months before we rendered our decision in this case, application of the 1980 Act to this case would appear proper at first blush. The general rule, however, is not without its exceptions, and the Supreme Court has declared that appellate courts should not give effect to an intervening change in the law where to do so would result in "manifest injustice." *Bradley, supra,* 416 U.S. at 711, 94 S.Ct. at

2016. We think this case falls within that exception.[1]

■ If the 1980 amendment of Title VII were applied to this case, Lawrence's Fifth Amendment claim would have to be dismissed, since Title VII would then constitute his exclusive judicial remedy. *Torre v. Barry*, 661 F.2d 1371 at 1374 (D.C.Cir. Aug. 1981); *Hofer v. Campbell*, 581 F.2d 975 (D.C.Cir.1978), *cert. denied*, 400 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979); *Richardson v. Wiley*, 569 F.2d 140 (D.C.Cir.1977). Lawrence's Title VII claim, however, would then be vulnerable to a motion to dismiss for having failed to exhaust administrative remedies, *see* 42 U.S.C. § 2000e–16(c), *despite the fact that Lawrence was not required to exhaust such remedies at the time he filed suit.*

The unfairness presented by this scenario need not be belabored. If the motion to dismiss were granted, Lawrence would be deprived of his sole judicial remedy merely because he did not comply with procedural requirements which did not exist until almost four years after he filed suit. Even if Lawrence were permitted now to pursue the available administrative remedies, his access to the courts, the forum he originally and properly sought, would be delayed until he spent the time and money necessary to wend his way through the administrative process. Given that Lawrence filed suit almost four years ago, and has yet to receive a hearing on the merits of his claim, we consider it would constitute manifest injustice to impose retroactive road blocks in the form of new procedural impediments to a hearing on his cause of action.[2] *See*

1. Although the dissent is technically correct in stating that our original holding "is at odds with an amendment to Title VII recently, but earlier, enacted by Congress", dis. op. at 1260 (footnote omitted), this statement places our original opinion in a somewhat misleading light. Our opinion contravened no statutory or judicial authority existing at the time the facts of this case occurred, or at the time the case was decided by the district court. Indeed, our original opinion blessed the result embodied in the district court's order, albeit for different and narrower reasons. And although it is true that Congress amended Title VII to clarify its coverage of the GAO after oral argument was heard in this case but before our decision was handed down, this significant amendment was not brought to our attention by the GAO, although it must undoubtedly have been aware thereof in light of its passage as part of the General Accounting Office Personnel Act of 1980. The GAO now petitions for rehearing, belatedly bringing the amendment to our attention, and requests us to apply it retroactively at the expense of Lawrence. As set forth above, we decline to do so and follow the rule that statutes should not be construed to apply retroactively where manifest injustice would result.

2. The dissent argues that the 1980 Act imposes no new procedural impediments to a hearing on Lawrence's claim because excepted-service employees were covered by Title VII even before the 1980 Act was passed. The evidence relied upon by the dissent, however, does not support this claim. As Representative Schroeder, the sponsor of the 1980 Act, stated:

    The bill makes clear that the General Accounting Office is covered by Title VII of the Civil Rights law of 1964, forbidding employment discrimination. *Up until now, GAO's coverage under this law was unclear.* 125 Cong.Rec. H9182 (1979) (remarks of Representative Schroeder) (emphasis added). *See also* S. Rep. No. 96–540, 96th Cong., 1st Sess. 10 (1979); H.R. Rep. No. 96–494, 96th Cong., 1st Sess. 5 (1979), U.S.Code Cong. & Admin. News 1980, p. 50. The legislative history of the 1980 Act, therefore, does not demonstrate that Congress believed the GAO was already covered by Title VII; rather, the history shows that Congress thought the matter of Title VII coverage for GAO employees, in both the competitive and excepted service, was uncertain, and that the best manner to effectuate its intent to bring all GAO employees within Title VII was to amend the statute. No further inference can safely be drawn from the passage of the 1980 Act and its legislative history. Since our decision in *Lawrence v. Staats*, 640 F.2d 427 (D.C. Cir.1981), the sole judicial pronouncement on the scope of Title VII protection afforded GAO employees held that Title VII did not apply to GAO's excepted service employees. The 1980 Act would indeed impose new procedural impediments in Lawrence's path were we to apply it retroactively.

    Furthermore, any implications in the dissent notwithstanding, we do *not* hold today that a federal employee who is not protected by Title VII need not exhaust any available administrative remedies before bringing suit in federal court upon a constitutional claim. This issue was not raised by the government either in the district court or in this court. All we hold today is that, given the drawn out history of this case and its present posture, it is too late in the day for the government now to prevail upon any exhaustion theory with respect to Lawrence's constitutional claim.

*Bradley, supra,* 416 U.S. at 720, 94 S.Ct. at 2020 (manifest injustice may result when retroactive application of a new law imposes "new and unanticipated obligations" upon a party); *Swinton v. J. Frank Kelly, Inc.,* 554 F.2d 1075, 1079–81 (D.C.Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976) (amendment to Longshoremen's and Harbor Workers' Compensation Act which added new layer of administrative review and which became effective while case pending in district court construed to apply prospectively because to hold otherwise would require appellant to return to the administrative process and invest time and money to exhaust an administrative remedy which did not exist at the time suit was filed.) We accordingly decline to construe the 1980 Act as applying to the facts of this case, and deny the petition for rehearing. The case is remanded to the district court for further proceedings on Lawrence's Fifth Amendment claim.

*Judgment accordingly.*

SPOTTSWOOD W. ROBINSON, III, Chief Judge, dissenting:

Appellants complain very correctly that my colleagues' original holding[1] is at odds with an amendment to Title VII recently, but earlier, enacted by Congress.[2] On that ground, appellants petition for rehearing. The petition is denied on the theory that application of the amendment here, though the course normally to be followed, would

work an injustice on Lawrence.[3] In my view, adherence to the new legislation not only is the single response consonant with congressional intent, but also is a course portending no unfairness to anyone. So, I respectfully dissent.

I

The events precipitating this litigation have been detailed sufficiently in our earlier opinions to eliminate any need for further recitation here.[4] Developments subsequent to oral argument but prior to issuance of those opinions, however, form the basis for the petition for rehearing, and thus require brief explication. By the General Accounting Office Personnel Act of 1980,[5] Congress established an independent personnel system for GAO employees, and in the process effected a small but significant amendment of Title VII of the Civil Rights Act of 1964.[6] Section 717(a) of Title VII[7] previously had provided that

> [a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies (other than the General Accounting Office) as defined in section 105 of title 5 . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.[8]

The amending provision deleted "(other than the General Accounting Office)"[9] in order to remove any doubt that the benefits of Title VII extended to all GAO employ-

---

1. *Lawrence v. Staats,* 205 U.S.App.D.C. 341, 640 F.2d 427 (1981).

2. General Accounting Office Personnel Act of 1980, Pub.L. No. 96–191, § 8(g), 94 Stat. 34 (1980), amending 42 U.S.C. § 2000e–16(a) (1976).

3. Majority Opinion (Maj. Op.) at 1258.

4. See *Lawrence v. Staats, supra* note 1, 205 U.S.App.D.C. at 342, 640 F.2d at 427–428; *id.* at 351, 640 F.2d at 437–438 (dissenting opinion).

5. Pub.L. No. 96–191, 94 Stat. 27 (1980).

6. Pub.L. No. 88–352, titl. VII, 78 Stat. 253 (1964), as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1976).

7. This section was enacted in 1972. See note 8 *infra.*

8. Civil Rights·Act of 1964, § 717(a), as supplemented by Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (1972), 42 U.S.C. § 2000e–16(a) (1976).

9. Section 8(g) of the 1980 Act specifies:
   Section 717(a) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16) is amended by striking out "(other than the General Accounting Office)."
   94 Stat. 34 (1980). This provision was but a tiny part of the 1980 legislation. The parties, though directly and radically affected thereby, did not bring the change to our attention, nor did we come upon it in our own extensive research.

ees, whether in the excepted or the competitive service.[10] Because my brethren had read Section 717(a) as affording Title VII coverage at GAO only to competitive-service employees,[11] appellants seek rehearing.

My colleagues concede that courts ordinarily should honor newly-enacted legislation in cases pending at the time it takes effect.[12] Nonetheless, although the 1980 Act became operative four months prior to issuance of our opinions,[13] they cast this principle aside on the ground that to abide by it is to inflict a "manifest injustice" upon Lawrence.[14] They say that were we to apply the 1980 Act, Lawrence would be confined to his Title VII remedies and his Fifth Amendment challenge [15] would perforce be lost.[16] They then reason that Lawrence's Title VII claim also would be vulnerable to dismissal because he did not exhaust administrative remedies, "despite the fact," they add, "that [he] was not required to exhaust such remedies at the time he filed suit."[17] They conclude:

> The unfairness presented by this scenario need not be belabored. If the motion to dismiss were granted, Lawrence would be deprived of his sole judicial remedy merely because he did not comply with procedural requirements which did not exist until almost four years after he filed suit. Even if Lawrence were permitted now to pursue the available administrative remedies, his access to the courts, the forum he originally and properly sought, would be delayed until he

spent the time and money necessary to wend his way through the administrative process. Given that Lawrence filed suit almost four years ago, and has yet to receive a hearing on the merits of his claim, we consider it would constitute manifest injustice to impose retroactive roadblocks in the form of new procedural impediments to a hearing on his cause of action.[18]

With all due respect, I think my brethren misapprehend not only the remedial scheme Title VII effectuates for federal employees, but also Lawrence's obligation and continuing ability to resort to the remedies Title VII affords. I think, too, they are mistaken in their belief that somehow Lawrence need not seek administrative redress of his grievance so long as he predicates his effort solely on the Fifth Amendment. Accordingly, I am unable to perceive any "manifest injustice" in relegating Lawrence to Title VII procedures, or any improvement in his lot by undertaking to excuse him from respecting them.

## II

At least until recently,[19] effective remedies—administrative and judicial—for discriminatory practices in federal employment were "far from sure." [20] This was one of the considerations prompting Congress in 1972 to add Section 717 to Title VII.[21] As even a bare reading discloses, this provision proscribes four types of employment dis-

---

10. See Part II *infra.*

11. See *Lawrence v. Staats, supra* note 1, 205 U.S.App.D.C. at 345, 640 F.2d at 431.

12. Maj. Op. at 1258.

13. The 1980 Act became effective on October 1, 1980. Our opinions were announced on February 5, 1981.

14. Maj. Op. at 1258.

15. See *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

16. Maj. op. at 1258. But see note 19 *infra.*

17. Maj. op. at 1259 (emphasis omitted).

18. *Id.* (footnote omitted).

19. See *Davis v. Passman, supra* note 15; see also *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

20. *Brown v. GSA,* 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402, 407 (1976). See also *Lawrence v. Staats, supra* note 1, 205 U.S.App.D.C. at 353, 640 F.2d at 439 (dissenting opinion).

21. See *Brown v. GSA, supra* note 20, 425 U.S. at 825–829, 96 S.Ct. at 1964–1966, 48 L.Ed.2d at 407–409.

crimination in the federal sector, and establishes a comprehensive scheme of administrative and judicial remediation. Indeed, the "balance, completeness, and structural integrity" of Section 717[22] was a principal factor leading the Supreme Court to conclude that Congress designed Title VII as the exclusive remedy statutorily available to federal employees complaining of job-related discrimination.[23]

My colleagues assert, nonetheless, that to require Lawrence now to utilize the remedies Section 717 confers would interpose "new procedural impediments to a hearing on his cause of action."[24] That assumes that GAO's excepted-service employees were excluded from Title VII's benefits, and thus freed from its constraints, until Congress acted in 1980. But the legislative history of the pertinent statutory prescription of that year,[25] though scant,[26] indicates much more strongly that it was merely a much-needed clarification of an original congressional intent that all GAO employees were to be covered by Title VII. The Senate Report informs us that the 1980 provision "amends the Civil Rights Act of 1964 to *make it clear* that GAO is covered;"[27] similarly, the House Report declares that it "*makes it clear* that the GAO is covered by title VII of the Civil Rights Act of 1964, as amended, forbidding discrimination in employment."[28] During hearings before the Senate subcommittee, the Comptroller General, in the only reference to that provision, explained:

The bill would also resolve a particularly critical concern in the equal opportunity area. We had assumed, and operated as if, we were covered by the provisions of the Civil Rights Act of 1964, as amended. In October 1977, in a civil suit filed by a former GAO employee, the U.S. District Court for the District of Columbia ruled that GAO is not covered by the Act.[29] The Justice Department appealed that ruling to the U.S. Court of Appeals for the District of Columbia. A 3-judge panel heard the case in December 1978. We are awaiting their decision. Regardless of that decision, we believe it is essential to eliminate any question about Congressional intent and employee protection. This proposed legislation includes an amendment to the Civil Rights Act which will achieve these objectives.[30]

Additionally, Representative Schroeder, the bill's sponsor, explained on the floor of the House that "[t]he bill *makes clear* that the General Accounting Office is covered by title 7 of the Civil Rights law of 1964, forbidding employment discrimination. Up until now, GAO's coverage under this law was unclear."[31]

22. *Id.* at 832, 96 S.Ct. at 1968, 48 L.Ed.2d at 411.

23. *Id.* at 835, 96 S.Ct. at 1969, 48 L.Ed.2d at 413.

24. Maj. Op. at 1259.

25. Quoted *supra* note 9.

26. The principal goal of the 1980 Act was an independent personnel system for GAO. Resultantly, the bulk of the Act's legislative history relates to concern over potential conflicts of interest stemming from GAO's oversight of Executive Branch programs and financial activities on the one hand, and executive regulation of GAO personnel matters through the Office of Personnel Management on the other. See S.Rep. No. 96–540, 96th Cong., 1st Sess. 2 (1979). The 1980 provision amending § 717(a), though by no means unimportant, nevertheless appears to have been a subsidiary concern of the Act's draftsmen, and occasioned little comment during its progress through Congress.

27. *Id.* at 10 (emphasis supplied).

28. H.R. Rep. No. 96–494, 96th Cong., 1st Sess. 5 (1979) (emphasis supplied).

29. The reference here obviously is to the District Court's decision in this case—*Lawrence v. Staats*, Civ. No. 77–913 (D.D.C. July 28, 1977) —holding that GAO employees are not covered by Title VII.

30. *General Accounting Office Personnel Act of 1980: Hearings on S. 1879 Before the Subcomm. on Energy, Nuclear Proliferation and Federal Services of the Senate Comm. on Governmental Affairs*, 96th Cong., 1st Sess. 27 (1979) (statement of Elmer B. Staats).

31. 125 Cong.Rec. H9182 (1979) (remarks of Representative Schroeder) (emphasis supplied).

In light of this history, I cannot agree with my brethren that Lawrence faces the "new procedural impediments" in the sense of requirements that Congress had not previously contemplated. But even if they are correct on that score, it does not follow that remedies available within the employing agency can be by-passed. That Title VII intercepts as well as benefits GAO excepted-service employees like Lawrence became explicit while this appeal remained pending, and "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."[32] Neither of the latter two exceptions is applicable here nor, in my judgment, is it unjust to insist that Lawrence initiate his Title VII effort at the administrative rather than the judicial level.

For reasons I already have expressed fully,[33] I do not share my brethren's concern that an administrative assertion of Lawrence's Title VII claims would expose it to dismissal as time-barred.[34] To begin with, we could eliminate any apprehension in that regard simply by directing GAO—an appellant here—to entertain Lawrence's grievance if presented.[35] Nor do I discern any "unfairness"[36] in requiring Lawrence to follow the procedural route Title VII prescribes. My colleagues say that his "access to the courts ... would be delayed until" the administrative phase reaches completion.[37] That, of course, is true, but this observation betrays several underlying premises I am unwilling to accept.

First is the assumption that Lawrence ultimately must come into court for vindication of the Title VII rights he presses. But GAO officials, as much as judges, are duty-bound to honor Title VII, and the legal presumption is that they will.[38] Surely Congress intended administrative consideration of Title VII complaints to be an efficacious procedure, not just a useless preliminary to an inevitable lawsuit. And should Lawrence prevail before GAO, there obviously would be no need to resort to the judicial process.

Also implicit in my brethren's argument is the notion that Title VII reflects a preference for a judicial tribunal to an administrative forum. I cannot believe that Congress chose informal, conciliatory agency treatment as the mode in the first instance[39] without the expectation that many Title VII problems would achieve satisfactory resolution right there. And certainly there is no basis for supposing that Law-

---

**32.** *Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 96 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974). See also *De Rodulfa v. United States,* 149 U.S.App.D.C. 154, 164–165, 461 F.2d 1240, 1250–1251 (1972), and cases there cited.

**33.** *Lawrence v. Staats, supra* note 1, 205 U.S. App.D.C. at 362, 640 F.2d at 448–449 (dissenting opinion).

**34.** See text *supra* at note 17.

**35.** See *Lawrence v. Staats, supra* note 1, 205 U.S.App.D.C. at 362, 640 F.2d at 448–449 (dissenting opinion). This step would appear to be unnecessary, for GAO's counsel has offered to afford Lawrence the opportunity of administrative consideration of his Title VII claim. Joint Appendix 15b–17b.

**36.** See text *supra* at note 18.

**37.** See text *supra* at note 18.

**38.** *FCC v. Schreiber,* 381 U.S. 279, 296, 85 S.Ct. 1459, 1470, 14 L.Ed.2d 383, 395 (1965); *Anni-*

ston *Mfg. Co. v. Davis,* 301 U.S. 337, 357, 57 S.Ct. 816, 825, 81 L.Ed. 1143, 1156 (1937); *National Lawyers Guild v. Brownell,* 96 U.S.App. D.C. 252, 255, 225 F.2d 552, 555 (1955), *cert. denied,* 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956).

**39.** 42 U.S.C. § 2000e–16 (1976), the provision applicable to federal employees, "provides for a careful blend of administrative and judicial enforcement powers," including "its rigorous administrative exhaustion requirements" and "[t]he crucial administrative role that each agency ... was given by Congress in the eradication of employment discrimination...." *Brown v. GSA, supra* note 20, 425 U.S. at 833, 96 S.Ct. at 1968, 48 L.Ed.2d at 411. And this provision "evidences a congressional preference for the informal processes of conciliation and persuasion over formal court proceedings as the means for correcting employment discrimination." *Richerson v. Jones,* 572 F.2d 89, 95 (3d Cir. 1978).

rence's claim would not be heard administratively as expeditiously as it could be judicially. Given the comprehensive scheme that Congress chose to employ in extending Title VII coverage to federal employees,[40] and the Supreme Court's ruling that Title VII is the only statutory avenue to redress for federal job discrimination,[41] I see no escape from the conclusion that Lawrence must utilize its administrative mechanism.

Lastly, I think my colleagues err in presupposing that even if out of "fairness" the 1980 amendment to Title VII should not be retroactively applied to Lawrence, he can directly pursue his Fifth Amendment claim without first exhausting available administrative grievance procedures. Exhaustion of such remedies seems to me to be as much a precondition to an action on constitutional grounds as it is to a Title VII lawsuit,[42] and Lawrence never sought to ventilate his grievance before GAO. What, then, can he gain by shunning Title VII in favor of the Fifth Amendment?

I would grant appellants' petition for rehearing and remand the case to the District Court with directions to grant Lawrence leave to invoke GAO's Title VII grievance procedure suitably and promptly, and to retain jurisdiction pending the outcome.

**40.** See *Brown v. GSA, supra* note 20, 425 U.S. at 829–833, 96 S.Ct. at 1966–1968, 48 L.Ed.2d at 409–412.

**41.** *Id.* at 824–825, 96 S.Ct. at 1964–1969, 48 L.Ed.2d at 407–413.

**42.** See *Lawrence v. Staats, supra* note 1, 205 U.S.App.D.C. at 363 n.119, 640 F.2d at 449 n.119 (dissenting opinion).